627 A.2d 287

**John W. GALBREATH and North River Ins. Co. (c/o Crum & Forster Ins. Co.), Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (Eunice GORDON, Quality Cleaners, PMA Insurance Co.), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 1992.

Decided June 23, 1993.

Reargument Denied July 27, 1993.

David H. Dille for petitioner John W. Galbreath.

James R. Schmitt, for respondent Eunice Gordon.

Maureen Kowalski, for respondents Quality Cleaners and PMA Ins. Co.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

John W. Galbreath (Prior Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting the petition for reinstatement and denying the claim petition of Eunice Gordon (Claimant).[1] We affirm.

On June 4, 1978, Claimant sustained a work-related back injury while employed as a cleaner by Prior Employer. Claimant received workmen's compensation benefits for various periods until November 8, 1980 when Claimant returned to work and benefits were suspended.

1. This case was reassigned to the authoring judge on April 12, 1993.

Claimant continued to perform for Prior Employer the duties of her pre-injury job until approximately 1982 when Prior Employer sold his business to Allied. Claimant performed identical duties for Allied and, thereafter, for Quality Cleaners (Current Employer), which bought the business in 1985. Claimant stopped working on May 2, 1988.

On July 20, 1988, Claimant filed a petition for reinstatement of benefits against Prior Employer, alleging that she became totally disabled from her pre-injury job as of May 2, 1988. On November 17, 1988, Claimant also filed a claim petition against Current Employer, alleging that on May 2, 1988, she aggravated her preexisting condition.

In support of the petitions, Claimant presented, *inter alia,* her own testimony and the deposition testimony of Dr. Cary S. Simons, D.C., who first examined Claimant on March 9, 1988 and who, at the time of the deposition, was treating her once or twice a week. Upon consideration of the evidence presented, the referee found that Claimant had met her burden of proving that the disability, which was precipitated by her June 4, 1978 injury, continues and that Claimant, therefore, was entitled to benefits by virtue of a recurrence as of May 2, 1988.[2] The referee further found that Claimant had failed to meet her burden of proving that a new injury, in the form of an aggravation of a preexisting condition, had occurred. Accordingly, the referee granted Claimant's petition for reinstatement against Prior Employer and denied her claim petition against Current Employer.

Both Prior Employer and Claimant appealed to the Board which affirmed the decision of the referee. Specifically, the Board concluded that:

under circumstances where Claimant has returned to work for several years while in suspension status, some medical testimony is necessary to support Claimant's position for continuing disability. However, we do not believe that

2. Although the referee found the deposition testimony of Dr. Simons to be "rather equivocal," he accepted Claimant's testimony that her current back problems originated from the original injury which occurred on June 4, 1978. Referee's Finding of Fact No. 20.

Claimant is required to produce unequivocal medical testimony to support such a position. In fact, so long as there is some medical evidence to corroborate Claimant's testimony of disability, we believe she has met her burden of proof for reinstatement of benefits.

Board's Decision and Order of November 20, 1991 at 6. The Board further concluded that Claimant's earning power was once again adversely affected by her disability.

With regard to Claimant's claim petition against Current Employer, the Board concluded that the referee's finding that Claimant had suffered a continuing disability, and not an aggravation of a preexisting condition, was supported by substantial evidence.

On appeal to this court, three issues are presented: 1) whether the Board erred in concluding that Claimant was not required to present unequivocal medical testimony in order to meet her burden of proving that her disability continues; 2) whether the Board erred in concluding that Claimant met her burden of proving that her disability continues; and 3) whether substantial evidence exists to support the referee's finding that Claimant suffered a recurrence of a prior injury as opposed to a new injury in the form of an aggravation of a preexisting condition.[3]

The parties do not dispute that a claimant seeking reinstatement of suspended benefits is required to show that his earning power is again affected by his disability and that the disability, which gave rise to his original claim, in fact continues. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990); *Dancison v. Workmen's Compensation Appeal Board (Penn Hills Senior High School Claims Management Services),* 145 Pa.Commonwealth Ct. 10, 602 A.2d 423, *petition for allowance of appeal denied,* 532 Pa. 666, 616 A.2d 987 (1992). The parties do not agree, however, as to

3. Our scope of review is limited to determining whether constitutional rights were violated or an error of law was committed and whether all necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro),* 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

the evidence that a claimant must present in order to meet his burden of proving that his disability continues.

 This court has previously held that a claimant, in order to establish a continuing disability, is required to produce unequivocal medical testimony. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 151 Pa.Commonwealth Ct. 361, 616 A.2d 1110 (1992). To evaluate unequivocality of medical evidence, consideration is given to whether the medical expert, after providing a foundation, testifies that in his medical opinion he believes the facts exist. *Corcoran v. Workmen's Compensation Appeal Board (Stuart Painting Co.)*, 144 Pa.Commonwealth Ct. 398, 601 A.2d 887, *petition for allowance of appeal denied*, 530 Pa. 657, 608 A.2d 31, *petition for allowance of appeal denied*, 531 Pa. 641, 611 A.2d 713 (1992). Whether medical testimony is equivocal or not is a question of law, fully reviewable by this Court, and is to be determined by reviewing the entire testimony of the medical witnesses. *ARMCO, Inc. v. Workmen's Compensation Appeal Board (Carrodus)*, 139 Pa.Commonwealth Ct. 326, 590 A.2d 827, *petition for allowance of appeal denied*, 529 Pa. 636, 600 A.2d 955 (1991).

 In support of her petition for reinstatement, the only medical testimony that Claimant presented as to her continuing disability was the deposition testimony of Dr. Simons. Our review of this testimony reveals that Dr. Simons testified, in his medical opinion, that Claimant's disability in fact continues. On direct examination, Dr. Simons testimony was as follows:

Q: Doctor, based on the history that this patient gave you, and your review of various medical records, taking into consideration her history and the x-rays that you have taken, do you feel that you can give us an opinion as to the cause of her problems?

. . .

A: I think that it was a long-term problem that degenerated and got worse with time when neglected.

Q: Do you feel qualified so you can give us an opinion, within a reasonable degree of chiropractic certainty, as to the cause of her problems?

A: Yes.

Q: What is the cause of her problem, Doctor?

. . .

A: Lumbosacral strain/sprain and strain, L–5, S–1, disc degeneration and multiple cervical subluxations and right sacroiliac joint dysfunction.

Q: Doctor, what caused this condition?

A: I believe it was aggravated by the time when she did her lifting, that initial lifting. That, and in time it degenerated it worse and worse.

Dr. Simons' Deposition of October 13, 1988, at 12–13.[4]

Although we conclude that the Board erred as a matter of law in holding that Claimant was not required to prove by unequivocal medical testimony that her disability continues, we also conclude, based upon our review of the entire deposition testimony of Dr. Simons, that Claimant indeed met this burden.

■ Last, Prior Employer asserts that the evidence of record does not support the referee's finding that Claimant suffered a recurrence of a prior injury as opposed to a new injury in the form of an aggravation.[5]

■ Whether a disability results from a new injury or is a recurrence of a prior work-related condition is a question of fact to be determined by the referee. *Lackawanna Refuse v. Workmen's Compensation Appeal Board (Christiano)*, 74

4. On redirect, Dr. Simons again testified that Claimant's "initial accident is the major cause of her problem." Simons' Deposition, at 28.

5. The distinction between disability resulting from an aggravation from a preexisting condition and recurrence of a prior disability is important because in the former situation the employer at the time of the aggravating injury is responsible for compensation. *Memorial Osteopathic Hospital v. Workmen's Compensation Appeal Board (Brandon)*, 77 Pa.Commonwealth Ct. 518, 466 A.2d 741 (1983). In the latter case, the employer at the time of the original injury is liable for disability resulting from the recurring injury. *Id.*

Pa.Commonwealth Ct. 286, 459 A.2d 899 (1983). When substantiality of the evidence is at issue, we must examine the entire record to determine if there is evidence which a rational person could accept to support the referee's findings. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *aff'd*, 531 Pa. 287, 612 A.2d 434 (1992).

■ Our review of the record indicates that Claimant herself testified that she suffered from a continuing condition which gradually worsened to the point where she was forced to stop working on May 2, 1988. Moreover, Claimant denied that she sustained a new injury at that time. The deposition testimony of Dr. Simons also lends support to the referee's conclusion that Claimant suffered from a recurrence of a preexisting condition and not a new injury.[6] Therefore, we conclude that there is substantial evidence to support the referee's finding that Claimant's disability as of May 2, 1988 was the result of the recurrence of her prior injury on June 4, 1978.

Accordingly, we affirm the order of the Board.

## ORDER

AND NOW, June 23, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

FRIEDMAN, J., concurs in the result only.

SILVESTRI, Senior Judge, dissenting.

I agree with the majority that a claimant seeking reinstatement of compensation benefits is required to prove, by unequivocal medical testimony, that their disability continues; however, I do not agree that Claimant herein established, by

---

6. Although Prior Employer is correct in his assertion that daily trauma or the daily aggravation of a preexisting injury is compensable, the "aggravation" to which Prior Employer refers is not the "new injury in the form of an aggravation" which must be found in order to impose liability on Current Employer.

competent unequivocal medical testimony, that her disability continued. Accordingly, I dissent.

The majority relies on the testimony of Claimant's treating chiropractor, Dr. Simons, as providing the requisite unequivocal medical testimony necessary for Claimant to sustain her burden for reinstatement of benefits. The majority states, "[o]ur review of this testimony reveals that Dr. Simons testified, in his medical opinion, that Claimant's disability in fact continues." (Majority opinion, p. 290). However, the actual question asked of Dr. Simons was as follows:

Q: Do you feel qualified so you can give us an opinion, within a reasonable degree of *chiropractic certainty*, as to the cause of her problem?

(Emphasis ours). (R.R. 134).

The scope of Dr. Simons' opinion was limited to that which a chiropractor, not a medical doctor, could give. Section 625.102 of the Chiropractic Practice Act[1] defines the term "Chiropractic" as follows:

A branch of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the neuro-musculo-skeletal system and the role of these relationships in the restoration and maintenance of health. The term shall include systems of locating misaligned or displaced vertebrae of the human spine and other articulations; the examination preparatory to the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health; and the use of board-approved scientific instruments of analysis, including X-ray. The term shall also include diagnosis, provided that such diagnosis is necessary to determine the nature and appropriateness of chiropractic treatment; The use of adjunctive procedures in treating misaligned or dislo-

---

1. Act of December 16, 1986, P.L. 1646, No. 188, *as amended,* 63 P.S. §§ 625.101–625.1106.

cated vertebrae or articulations and related conditions of the nervous system, provided that, after January 1, 1988, the licensee must be certified in accordance with this act to use adjunctive procedures; and nutritional counseling, provided that nothing herein shall be construed to require licensure as a chiropractor in order to engage in nutritional counseling. The term shall not include the practice of obstetrics or gynecology, the reduction of fractures or major dislocations, or the use of drugs or surgery.

Here, Dr. Simons' diagnosis of Claimant's condition and the cause thereof was as follows:

A: I think that it was a long-term problem that degenerated and got worse with time when neglected.

Q: What caused this condition?

A. I believe it was aggravated by the time when she did her lifting, that initial lifting. That, and in time it degenerated it worse and worse.

(R.R. 134–135).

However, Dr. Simons saw Claimant for the first time on March 9, 1988; approximately ten years after her initial work related injury.

I do not agree with the majority's conclusion that Dr. Simons' testimony constituted substantial competent evidence supporting Claimant's reinstatement of benefits. Dr. Simons' relation of Claimant's current condition to her original June 4, 1978 work injury goes beyond the scope of his "chiropractic" knowledge and is therefore not competent. Accordingly, I would deny reinstatement of benefits and reverse the order of the Board.