**Robin MOORE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AMERICAN SINTERED TECHNOLOGIES, INC. and the PMA Group), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 2, 2000.

Decided Aug. 9, 2000.

Reconsideration Denied Oct. 19, 2000.

Paul J. Malizia, Emporium, for petitioner.

Carl N. Moore, Erie, for respondents.

BEFORE: DOYLE, President Judge, and FRIEDMAN, Judge, and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Robin Moore (Claimant) petitions for review of that portion of an order of the Workers' Compensation Appeal Board (WCAB) which affirmed a decision of the workers' compensation judge (WCJ) to terminate Claimant's workers' compensation benefits as of August 31, 1994.

On April 6, 1992, Claimant sustained a work-related injury while employed with American Sintered Technologies, Inc. (Employer). Employer paid benefits to Claimant pursuant to a Notice of Compensation Payable, which described Claimant's injury as "acute lumbar strain." On April 11, 1994, Employer filed a Termination Petition alleging that, as of April 5, 1994, Claimant's work-related disability had ceased. Claimant filed a timely Answer denying the averments contained in the Termination Petition. (WCJ's Findings of Fact, Nos. 1–3).

At the hearings on Employer's Termination Petition, Claimant testified on her own behalf and described her work injury. Claimant testified that she was rolling a barrel and tried unsuccessfully to catch it as it slipped; as the barrel fell, she fell with it, falling to her knees. Claimant stated she could not stand up after falling and that she was taken by ambulance to the emergency room. (WCJ's Findings of Fact, Nos. 4–6.)

Claimant also testified about her medical history, specifically, her history of scoliosis. She stated that she had a spinal fusion in 1985, requiring the placement of a Harrington rod in her back. She testified that, in 1989, the Harrington rod came loose, tenting her skin. As a result, her treating physician, Robert S. Supinski, M.D., a board-certified orthopedic surgeon, performed an operation to slide the rod out from under her skin. Claimant stated that, after this surgery, she had no further low back pain until the work-related accident on April 6, 1992. (WCJ's Findings of Fact, Nos. 8–9, 12.)

Claimant also offered the testimony of Dr. Supinski. During his December 28, 1994 testimony, Dr. Supinski stated that he first treated Claimant for scoliosis when she was fourteen years old. (R.R. at 90a.) He explained that he performed a spinal fusion with a Harrington rod in 1985, but that, in 1986, x-rays revealed that the rod had loosened, requiring removal in 1989 due to Claimant's increased pain and discomfort. (R.R. at 90a–91a.) Dr. Supinski testified that Claimant returned to his office on two occasions after removal of the rod: once in June of 1989 for follow-up care from her surgery and once in October of 1990, when she complained of burning pain in her upper back. (R.R. at 91a.) Dr. Supinski stated that he did not treat Claimant again until April of 1992, following her work-related injury. At that time, he compared Claimant's pre-injury x-rays to those taken after her April 1992 injury, and he concluded that Claimant had fractured a previously solid fusion at L4–L5 in the fall at work. (WCJ's Findings of Fact, No. 10; R.R. at 92a–95a.) Dr. Supinski performed surgery to re-fuse the L4–L5 interspace on February 25, 1993. (WCJ's Findings of Fact, No. 11.) Prior to his December 28, 1994 testimony, Dr. Supinski last examined Claimant on August 31, 1994; Dr. Supinski testified that, as of the date of this examination, Claimant had fully recovered from the work-related injury and that her continuing complaints were related to her scoliosis condition and the treatment for that condition. (WCJ's Findings of Fact, No. 21; R.R. at 101a–04a, 116a–17a.)

For its part, Employer offered the testimony of David H. Johe, M.D., an orthopedic surgeon. Dr. Johe testified regarding his review of Claimant's medical records as well as his examination of Claimant on November 23, 1993. Dr. Johe testified that Claimant's 1985 surgery was not successful and did not result in a solid fusion.

That fact, combined with the fact that Claimant's fall was not a direct trauma to her back, would not have caused her to fracture her back. Accordingly, Dr. Johe concluded that Claimant sustained only a lumbar strain as a result of her work injury and that the fall merely exposed an underlying problem. (R.R. at 154a–55a, 184a.) Dr. Johe further testified that Claimant was fully recovered from the work-related strain. (WCJ's Findings of Fact, Nos. 16–17.) Dr. Johe also explained that his examination of Claimant revealed inconsistent findings and that there were no objective findings to support a continuing injury to the low back muscles or Claimant's subjective complaints. (WCJ's Findings of Fact, Nos. 15–16.)

Dr. Supinski testified again on February 19, 1997, after seeing Claimant that day for the first time since August 31, 1994. (WCJ's Findings of Fact, No. 23.) Dr. Supinski testified that, according to updated x-rays, the fusion he performed in February of 1993 appeared to be solid and that his examination of Claimant revealed a soft tissue crepitus [1] in the back at the level of the lumbar spine. (WCJ's Findings of Fact, No. 24.) Because Claimant did not give him a history of any intervening accidents or injuries, Dr. Supinski concluded that the crepitus was caused by the April 1992 work injury. (WCJ's Findings of Fact, No. 25; R.R. at 243a; 251a–54a.) Dr. Supinski further testified that Claimant was not fully recovered from her work injury as of August 31, 1994, thereby retracting his 1994 deposition testimony with respect to this issue. (WCJ's Findings of Fact, No. 32; R.R. at 240a, 244a.) Dr. Supinski explained that, given the facts he had at the time of his 1994 testimony, his opinion was accurate; however, at the time of his 1997 testimony, he changed his opinion based upon a review of the patient and additional information he now had.[2] Dr.

---

1. Crepitus is the noise produced by rubbing bone or irregular cartilage surfaces together. STEDMAN'S MEDICAL DICTIONARY 368 (25th ED.1990).

2. The additional information consisted of listening to Claimant, putting his hand on Claimant's lower back and feeling the crepitus. (R.R. at 245a.)

Supinski further explained that, in August of 1994, it appeared as though Claimant would continue to improve, but, in fact, she did not. (R.R. at 248a.) Dr. Supinski noted that Claimant had complained of crepitus in March of 1994, but stated that he could not feel the crepitus at that time; however, he felt the crepitus at his February 19, 1997 examination. (R.R. at 249a.)

Claimant testified for a final time on October 23, 1997, regarding the surgery that Dr. Supinski performed on her back on September 30, 1997.[3] Claimant stated that she had the surgery because of pain and cracking in her lower back. (R.R. at 218a–19a.)

The WCJ found the testimony of Dr. Johe to be credible in part and the testimony of Dr. Supinski to be credible in part. Specifically, the WCJ accepted Dr. Johe's opinion that there was never a fusion at the L4–L5 level following Claimant's 1985 surgery. Consequently, the WCJ did not accept Dr. Supinski's opinion that Claimant fractured a previously stable fusion at L4–L5 when she fell at work. However, the WCJ rejected Dr. Johe's opinion that Claimant's condition progressed naturally without contribution from the work-related injury. Rather, the WCJ credited Dr. Supinski's opinion that Claimant's February 1993 surgery was related to Claimant's April 1992 work injury. The WCJ also credited Dr. Supinski's 1994 testimony that Claimant was fully recovered from her work injury as of his August 31, 1994 examination of Claimant and, thus, rejected Dr. Supinski's 1997 testimony that Claimant was not fully recovered from her work injury in August 1994. In this regard, the WCJ found:

> I do not accept as credible Dr. Supinski's testimony in 1997 that the Claimant was not fully recovered from her April, 1992 work injury in August, 1994. It appears clear that after the successful fusion was accomplished in February, 1993 the Claimant had increased symptoms related to her pre-existing condition. The Claimant's 1993 surgery was successful in resolving the pseudoarthritis condition related to the work injury. Dr. Supinski originally opined that the Claimant's complaints after this surgery are related to her pre-existing condition. The finding of crepitus in the back that Dr. Supinski later observed was, according to the Claimant's testimony, always there.

(WCJ's Findings of Fact, No. 32.) Thus, the WCJ concluded that Employer met its burden to establish that Claimant was fully recovered from her work injury at the time of Dr. Supinski's August 31, 1994 examination. Accordingly, the WCJ granted Employer's Termination Petition, effective as of that date. Claimant appealed the WCJ's decision to the WCAB, which vacated in part and affirmed, as modified, in part.[4]

Before this court,[5] Claimant argues that Employer failed to prove by substantial medical evidence that all of Claimant's work-related disability had ceased. Spe-

---

**3.** According to medical records, Dr. Supinski performed an osteotomy of the fusion mass at L3–L5, with insertion of pedicle screws and rods. (WCJ's Findings of Fact, No. 26.)

**4.** The WCJ concluded that Claimant failed to meet her burden to establish that she was disabled as of February 19, 1997, or thereafter, as a result of her April 1992 work injury. (WCJ's Conclusions of Law, Nos. 1–2.) On appeal, the WCAB vacated the WCJ's Conclusion of Law, No. 2 which placed the burden of proof on Claimant to show that she was disabled as of February 19, 1997. However, the WCAB concluded that this was not reversible error because the WCJ applied the correct burden of proof in determining that Employer met its burden of proof under its Termination Petition. The WCAB also modified the WCJ's award with respect to reimbursement to Claimant for costs of prosecution. These issues are not before this court.

**5.** Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

cifically, Claimant argues that Employer's medical expert's testimony was equivocal and ignores the facts of the case.[6] We note, however, that the WCJ did not credit Dr. Johe's testimony regarding Claimant's diagnosis or when she was recovered from the work-related injury. Therefore, we need only consider whether Dr. Supinski's testimony is adequate to support Employer's Termination Petition. After a review of that testimony, we must conclude that it is not.[7]

In a termination petition proceeding, the employer bears the burden of proving, through substantial, competent credible medical testimony, that a claimant's disability has ceased or that any remaining disability is no longer related to the work injury. *See McFaddin v. Workmen's Compensation Appeal Board (Monongahela Valley Hospital),* 153 Pa. Cmwlth.252, 620 A.2d 709 (1993). In order for medical testimony to constitute competent medical evidence, such testimony must be unequivocal. Whether medical testimony is equivocal is a question of law, fully reviewable by this court, and is to be determined by reviewing the entire testimony of the medical witness. *Galbreath v. Workmen's Compensation Appeal Board (Gordon),* 156 Pa.Cmwlth.378, 627 A.2d 287 (1993), *appeal denied,* 537 Pa. 643, 644 A.2d 165 (1994). Here, the WCJ credited Dr. Supinski's 1994 testimony, but rejected his 1997 testimony, and relied on the 1994 testimony as the basis to grant Employer's Termination Petition. However, in his 1997 testimony, Dr. Supinski recanted his 1994 testimony that Claimant had fully recovered from the work-related injury as of August 31, 1994, explaining that his opinion had changed based on new information he had. This *recantation renders*

Dr. Supinski's 1994 testimony equivocal. *See Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas),* 77 Pa.Cmwlth.202, 465 A.2d 132 (1983) (stating that if the witness recants the opinion first expressed, such opinion is equivocal). Because such equivocal medical testimony cannot support a finding that Claimant's work-related disability had ceased, Employer has not sustained its burden of proof.

Accordingly, we reverse that portion of the order of the WCAB, which affirmed the WCJ's decision to terminate Claimant's workers' compensation benefits as of August 31, 1994.

### ORDER

AND NOW, this 9th day of August, 2000, that portion of the order of the Workers' Compensation Appeal Board, dated February 9, 2000, at A98–2996, which affirmed the termination of Robin Moore's benefits is hereby reversed.

---

**6.** Claimant points out that Dr. Johe stated Claimant was fully recovered from the work-related injury, but released Claimant to a light-duty position.

**7.** Claimant also argues that the WCJ's finding that Claimant "had always suffered from crepitus," which was the basis for granting Employer's Termination Petition, is unsupported by the record. Claimant expressly stated she always suffered from crepitus; however, although Claimant's statement, by itself, could appear to mean that Claimant suffered from crepitus *prior* to her work-related injury, the context of Claimant's statement appears to limit the statement to the *post*-injury period. (*See* R.R. at 216a–19a.)