# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Crocker, : 
          Petitioner : 
           : 
          v. : No. 803 C.D. 2015
           : Submitted: October 16, 2015
Workers' Compensation Appeal : 
Board (Dixie Consumer Products, : 
LLC), : 
          Respondent : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MARY HANNAH LEAVITT, Judge[1]
             HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                         FILED: February 26, 2016

David Crocker (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying benefits for a knee injury. The Workers' Compensation Judge (WCJ) had awarded benefits, but the Board reversed for the stated reason that Claimant's medical evidence did not unequivocally establish that his injury was work-related. We affirm.

Claimant worked as a production and maintenance supervisor for Dixie Consumer Products, LLC (Employer), which manufactures Dixie cups and lids. In December 2012, Claimant filed a claim petition alleging that he sustained a left knee injury while at work on October 2, 2012. Claimant sought total

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

disability benefits as of October 3, 2012, and ongoing. Employer filed an answer and a notice of workers' compensation denial asserting that Claimant's injury was not work-related. At the proceeding before the WCJ, Claimant and Employer appeared and submitted evidence.

Claimant testified that he sustained a left leg injury in a non-work-related motorcycle accident, which necessitated a partial left knee replacement in 2006. After medical leave, Claimant returned to full-duty work, although he occasionally limped from knee pain. As a supervisor, Claimant oversaw 12 to 13 production lines, which required walking on the plant floor. Claimant worked ten-hour shifts and was on his feet most of that time. Claimant also went on fishing and hunting trips that involved strenuous walking through fields and woods.

On October 2, 2012, Claimant was standing in his office, which has a flat tiled floor. As Claimant turned to walk around his desk, he took an "awkward" step and his left knee popped. Reproduced Record at 18a, 48a-49a (R.R. ___). Claimant explained that by "awkward" he meant that he did not step with his foot pointing straight ahead; rather, his foot "pivoted out." R.R. 115a. Claimant immediately felt pain on the side of his knee that was worse than the occasional pain he experienced. He had to sit down for five or ten minutes before he could walk, but he was able to continue working.

The next day, after several hours of work, Claimant's knee popped and buckled as he was walking with his supervisor. Claimant had been walking straight on a flat concrete floor and did not trip or step awkwardly. Claimant went back to his office and sat down but eventually had to leave work and seek medical

treatment because of knee swelling and severe pain. Claimant underwent a total knee replacement on October 31, 2012.[2]

Claimant presented the medical deposition of Craig L. Israelite, M.D., a board certified orthopedic surgeon, who did both the 2006 and 2012 knee replacement surgeries. Dr. Israelite began treating Claimant for non-work-related left knee problems in October 2005 for, *inter alia*, degenerative arthritis in one of the three compartments of his knee. In June 2006, Dr. Israelite did a partial knee replacement. By August 2007, Claimant had recovered well and had no restrictions on walking; he was restricted only from high impact activities such as running and jumping.

On October 9, 2012, Claimant met with Dr. Israelite because of his increased pain and difficulty bearing weight. An x-ray showed damage to the partial knee replacement and increased arthritis in the other two knee compartments. During the October 31, 2012, total knee replacement surgery, Dr. Israelite saw that a plastic piece of the partial knee replacement device had broken. He characterized this as a "catastrophic failure" of the device which is "extremely unusual." R.R. 168a-69a. Dr. Israelite testified that all unicompartmental knee replacements eventually fail, but the device typically becomes worn over time or loosens gradually.[3]

---

[2] Claimant testified that he was doing physical therapy and could not return to his pre-injury job because of all the walking it required. At any rate, Employer had fired Claimant on October 18, 2012, for an alleged policy violation Employer discovered in August 2012, before the injury. The WCJ found Employer's reason for firing Claimant suspicious and that Claimant would be eligible for disability benefits. Based on our disposition of the case on causation of the injury, Claimant's entitlement to disability benefits despite being fired need not be addressed.

[3] Dr. Israelite agreed that because Claimant was 48 years old at the time of the partial knee replacement in 2006, it was reasonably likely that Claimant was going to need another left knee **(Footnote continued on the next page . . .)**

3

Dr. Israelite stated that he believed Claimant had stumbled or twisted his knee at work, but he acknowledged there was no evidence of it in the medical chart or records. Dr. Israelite testified that someone should be able to walk and even take an "awkward step" without fracturing the knee replacement. R.R. 189a, 191a-92a. Dr. Israelite stated that Claimant's knee replacement had failed while he was walking at work, but he could not say why the knee replacement failed, explaining "I'm here to treat [Claimant's] pain and problems and not the causation." R.R. 179a. Dr. Israelite continued:

> Again, the mechanism at this point is not what we're looking at when he comes to see me. We're just trying to figure out how to treat [Claimant]. Causation in this case - - sometimes causation is important, but when a person has a failure, it is not really important for me.

R.R. 191a.

Employer presented the deposition testimony of Murray K. Dalinka, M.D., a board certified radiologist who reviewed Claimant's x-rays and medical records. Dr. Dalinka agreed with Dr. Israelite that it is uncommon for the plastic part of a knee replacement, which is very durable, to fracture. Dr. Dalinka opined that taking an awkward step is normal stress and did not cause Claimant's knee replacement to fail. Dr. Dalinka explained that if an awkward step caused a knee replacement to fail, "then these things would break all the time because people take awkward steps over a period of six years." R.R. 347a. Dr. Dalinka testified that

---

**(continued . . .)**
replacement at some point. According to Dr. Israelite, the average lifespan of a partial knee replacement is at least ten years. Dr. Israelite characterized Claimant as overweight, which places more stress on a knee replacement.

4

Claimant's knee replacement failure was "related in time [but] not substantively related" to taking the awkward step at work. R.R. 350a.

Employer also presented the deposition testimony of Curt D. Miller, M.D., a board certified orthopedic surgeon who did an independent medical examination of Claimant on April 12, 2013. Dr. Miller testified that walking on a flat surface will not cause a knee replacement device to fail because it is "very durable." R.R. 291a. Dr. Miller opined that the incidents at work on October 2nd and 3rd did not cause or contribute to the failure of the device. Dr. Miller attributed the failure to the cumulative stress of Claimant's outdoor lifestyle, his weight or a possible imperfection in the plastic itself. Dr. Miller opined that the knee replacement was going to fail when it did regardless of whether Claimant was at work.

The WCJ accepted as credible the testimony of Claimant and Dr. Israelite.[4] The WCJ found that Claimant's partial knee replacement device fractured and rendered him totally disabled. As to causation, the WCJ found that all of the medical experts in this case agree "that [C]laimant's taking a twisting or awkward step on October 2 was the probable acute event that caused the fracture of his partial knee component." WCJ Decision, 9/24/13, at 7; Finding of Fact No. 12. The WCJ further found:

> In light of the fact that there is no dispute an acute twisting event occurred, I find Dr. Israelite's opinion that this event was a substantial contributing factor to the failure of the component and [C]laimant's total disability entirely credible and persuasive. To the extent Dr. Miller and Dr. Dalinka attribute

---

[4] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

the failure to hunting, fishing, and [C]laimant's weight, their testimony is rejected.

*Id*. Based on these findings, the WCJ concluded that Claimant met his burden of proving he sustained a disabling work-related injury in the nature of a failure of his unicompartmental knee prosthesis. Accordingly, the WCJ granted the claim petition and awarded benefits as of October 3, 2012.

Employer appealed. The Board reversed, concluding that Claimant did not prove through unequivocal medical testimony that he sustained an injury causally related to his work. The Board observed that Dr. Israelite opined where and when Claimant's knee replacement failed, but he could not say why it failed. Claimant then petitioned for this Court's review.[5]

On appeal, Claimant argues that the Board erred in concluding that Claimant failed to establish a work-related injury. Claimant asserts that Dr. Israelite unequivocally testified that taking an awkward step at work on October 2, 2012, was a substantial contributing factor in causing the plastic component of his knee replacement device to fracture. We disagree.

In a claim petition, the claimant has the burden of proving all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove he sustained an injury that is causally related to his work. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corp. Maple Creek Mine)*, 626 A.2d 1144, 1146 (Pa. 1993). When there is no obvious causal

---

[5] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, Board procedures were violated, constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

6

connection between the injury and the alleged work-related cause, unequivocal medical evidence is necessary to establish that connection. *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1000 (Pa. Cmwlth. 2007).

Equivocal medical testimony cannot support a finding of causation. *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 954 (Pa. Cmwlth. 2008). Whether medical evidence is equivocal is a question of law fully reviewable by this Court, and must be determined by reviewing the entire testimony of the medical witness, not merely one or two sentences. *Moore v. Workers' Compensation Appeal Board (American Sintered Technologies)*, 759 A.2d 945, 949 (Pa. Cmwlth. 2000). An expression of medical opinion is unequivocal if the medical expert testifies he believes that certain facts exist and that there is a causal relationship. *Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corporation)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011).

Claimant points to the WCJ's finding that the medical experts agree taking an awkward step at work on October 2, 2012, was the probable acute event that caused Claimant's partial knee replacement to fracture. The WCJ's finding is not supported by substantial evidence. To the contrary, Dr. Dalinka and Dr. Miller both testified that taking an awkward step did *not* cause Claimant's knee replacement component to fracture.[6]

---

[6] We also note that the WCJ's finding that "there is no dispute an acute twisting event occurred" is not supported by the evidence. WCJ Decision, 9/24/13, at 7; Finding of Fact No. 12. Claimant testified that he stepped with his foot pivoted out, not that he twisted his knee, and Dr. Israelite testified there is no evidence in the medical records that Claimant twisted his knee at work.

Claimant argues that Dr. Israelite offered an unequivocal opinion that Claimant's job caused his knee replacement to fail. In support, he points to the following testimony:

> Q. [D]o you have an opinion, within a reasonable degree of medical certainty, whether the incident on [October] 2nd was a substantial contributing factor in causing the condition you diagnosed as well as the need for the surgery?
>
> A. *I don't think there is any question that he had an acute event which caused his replacement to fail.*

R.R. 170a (emphasis added).

Immediately following the above-quoted testimony on which Claimant relies, Dr. Israelite continued:

> Q. And is the event as he describes it consistent with the kind of event that would cause a replacement to fail?
>
> A. The answer is not usually.
>
> Q. Why?
>
> A. Usually just walking would not cause a component to fail.
>
> Q. But you feel that it did in this case, though?
>
> A. I think that the event occurred when he was walking. The question you asked was does this usually cause…
>
> Q. Right.
>
> A. No. I mean, we do partial and full knee replacements all the time which function quite well. But the patient, whom I have actually known for many years, is a pretty reliable historian. He was walking and felt a pop and had pain. That is when this event occurred. It did not happen three months prior or two years prior.

R.R. 170a-72a (objections by Employer's counsel omitted).

8

Dr. Israelite testified that the mechanism of injury and causation were "not really important" to him. R.R. 191a. When specifically questioned why the device failed when it did, Dr. Israelite testified as follows:

> Q. So do you know the reason why [Claimant] had a failure of his unicompartmental knee after six years?
>
> A. I could speculate. I think he had wear continuing. He had an event which occurred on that date with agreeably [sic] a trauma that shouldn't normally cause it to wear through and actually fracture on that date.
>
> *My whole testimony is really when this happened. I honestly don't think there is any question of when and where this failed.* But there is no question – we've already established that these things wear out over time.
>
> Q. Why did his wear out prematurely?
>
> A. I don't have all the answers for that. It could [be] excessive use, it could be improper positioning on my part technically, it could have been a defect. *I don't think anyone could give you any definitive or speculative answer on why it wore out on him.*

R.R. 194a-95a (emphasis added).

Viewing Dr. Israelite's testimony in its entirety, we conclude, as did the Board, that he did not render an unequivocal opinion on causation. Dr. Israelite testified as to what happened with Claimant's partial knee replacement component (fractured and displaced), when it happened (while walking) and where it happened (at work). However, a claimant must prove a causal relationship between work duties and the injury. Dr. Israelite did not establish the requisite causal link because he was unable to say why the fracture happened. As such, the

9

Board correctly concluded that Claimant failed to meet his burden of proof and denied the claim petition.[7]

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

---

[7] Claimant offers the alternative argument that he did not need to prove the causal connection between an awkward step at work and the failure of his partial knee replacement because the connection is obvious. All of the medical experts opined that taking an awkward step is normal and would not typically cause a knee replacement device to fail. As such, the connection is not obvious.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Crocker, : 
          Petitioner : 
         : 
        v. : No. 803 C.D. 2015
         : 
Workers' Compensation Appeal : 
Board (Dixie Consumer Products, : 
LLC), : 
          Respondent : 

# **O R D E R**

AND NOW, this 26th day of February, 2016, the order of the Workers' Compensation Appeal Board dated April 16, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge