**Susan (Nawn) GREEN, Petitioner**

**v.**

**Workers' Compensation Appeal Board (US Airways), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 13, 2011.

Decided Aug. 22, 2011.

Reargument Denied Oct. 20, 2011.

Kevin R. O'Malley, Pittsburgh, for petitioner.

Todd K. Foster, Philadelphia, for respondent.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Susan Nawn Green (Claimant) petitions this Court for review of the October 28, 2010 order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) denying Claimant's reinstatement and penalty petitions. Claimant presents four issues for this Court's review: (1) whether the Board erred as a matter of law by affirming a decision of the WCJ which was not reasoned and relied on an erroneous interpretation of medical evidence; (2)

whether the Board erred as a matter of law by affirming the WCJ's decision without addressing the WCJ's erroneous rejection of the testimony of Claimant's unrebutted medical expert, William Carson, Jr., M.D. (Dr. Carson); (3) whether the Board erred as a matter of law by affirming the WCJ's decision where the WCJ erroneously relied on lay testimony to address causal connection of medical treatment; and, (4) whether the Board erred by failing to address the WCJ's application of an incorrect burden of proof. For the following reasons, we vacate the order of the Board and remand for a new decision by a WCJ in accordance with this opinion.

On August 11, 1993, Claimant was working as a flight attendant for U.S. Airways (Employer) when she suffered a work injury. Employer issued a Notice of Compensation Payable (NCP) at that time describing Claimant's injury as a right meniscus tear. On August 28, 2000, Claimant's description of injury was amended to include a left knee injury as well. Claimant's benefits were suspended as of August 12, 2003. On October 26, 2006, the Board recognized Claimant's left tibial plateau cartilage damage as part of her accepted work injury, and amended the NCP to include a lateral femoral condyle defect as well.

On January 7, 2008, Claimant filed a Reinstatement Petition alleging that as of December 1, 2007, her condition had worsened and medical bills were unpaid. She also filed a Penalty Petition on that date, alleging that Employer violated the Pennsylvania Workers' Compensation Act (Act)[1] by failing to pay for reasonable and necessary medical expenses. On September 4, 2008, Claimant filed a second Penalty Petition alleging that Employer violated the terms and provisions of the Act by failing to pay Dr. Carson on January 2,

2008 and June 4, 2008. The petitions were consolidated and a hearing was held before the WCJ.

Testifying by way of deposition, Dr. Carson explained the following regarding the history and present state of Claimant's work injury.

> I performed arthroscopic surgery of her left knee on—in May of 1994. At that time, there was a medial meniscus tear and there was also a chondral defect over the lateral femoral condyle. Just for clarification, the lateral femoral condyle is the lateral or outside of your knee, and the articular cartilage covering that is called articular cartilage.... There ... was an injury to that.... [W]e were concerned about the articular cartilage at the lateral femoral condyle.

Reproduced Record (R.R.) at 66a, 68a.

> I've operated on her knee twice, and I've seen this chondral lesion on the end of the cartilage on the end of the femur. And I've also operated on her medial meniscus. And knowing that she's got two previous injuries to that area and we've altered the anatomy ... because of the injury, that would be the logical place that ... she would be having problems going forward, knowing that the articular cartilage problem is a progressive one.... [C]linically, unfortunately, once you have an articular cartilage injury ... once you lose that cushioning, it won't grow back.... It will be a progressive problem as time goes on, which appears to be happening at this point on her, on this patient.

R.R. at 69a–71a.

> [H]er original injury was a medial meniscus tear. Now she has further tearing of the medial meniscus. So [her extensive degenerative tear of the posterior

---

1. Act of June 2, 1915, P.L. 736, *as amended,*    77 P.S. §§ 1–1041.4, 2501–2708.

horn of the medial meniscus] logically would progress from the original injury, work injury.

R.R. at 77a–78a.

> [W]e all—orthopedists know that once the meniscus tears and you fix it . . . it's not normal . . . it's prone to reinjury and that's what's happened. . . .

R.R. at 79a.

> [O]nce you get articular cartilage damage to the end of the bone, it's not going to get better. It's just going to worsen as time goes on.

R.R. at 88a.

> [S]he's got, you know, at this point, a degenerative knee that seems to be getting worse.

R.R. at 90a.

Notably, the WCJ found Dr. Carson to be credible. See WCJ Findings of Fact (FoF) No. 13. In contrast, Employer did not present any expert testimony regarding the history and present state of Claimant's work injury. That notwithstanding, the WCJ found Dr. Carson to be "unpersuasive." *Id.* Specifically, the WCJ stated:

> The testimony of Claimant's medical witness, Dr. William Carson, Jr., is found to be credible but unpersuasive as to Claimant's continuing disability, the recurrence of her work injuries, the causal relationship between her injuries and her work with [Employer], and the reasonableness and necessity of her medical treatment. It is noted that Dr. Carson characterized Claimant's injuries as degenerative in nature. It is further noted that although Defendant[ ] did not present medical testimony to refute Dr. Carson's testimony, Claimant failed to pres-

ent clear and convincing evidence to support her Petitions.

*Id.* Thus, the WCJ rejected Dr. Carson's credited testimony, specifically finding, in stark contrast to Dr. Carson's conclusion, that "Claimant did not suffer a worsening of her condition," (FoF No. 15) and concluding, "Claimant failed to prove that her condition had worsened as of December 1, 2007, leading to a recurrence of her work injury and related disability." WCJ Conclusions of Law No. 2. The WCJ stated no reason for the rejection of Dr. Carson's testimony, other than the notation that "Dr. Carson characterized Claimant's injuries as degenerative in nature." *Supra.*

The WCJ accepted, as fact, what it deemed to be the credible and persuasive testimony of lay witness David Newlin, Employer's insurance adjuster, who testified concerning the insurer's approval and rejection of medical costs. The WCJ specifically stated that she "found [him] credible and persuasive as to the lack of a causal relationship between claimant's injuries and medical treatment, and her work." FoF No. 14. The WCJ explained that "Mr. Newlin's opinions were based on the decision of the Board and Dr. Carson's own reports."[2] *Id.* Accordingly, on July 28, 2009, the WCJ denied all three of Claimant's petitions. Claimant appealed to the Board.

■ On October 28, 2010, the Board affirmed the decision and order of the WCJ on the false premise that "[t]he WCJ found not credible the testimony of Claimant *and* Claimant's medical witness." Bd. Op. at 2 (emphasis added). The Board concluded: "As Claimant failed to present *any credible evidence* in support of her

---

**2.** It is noted that the October 26, 2006 decision of the Board which amended Claimant's NCP included a lateral femoral condyle defect, but specifically excluded medial femoral condyle lesion and lateral tibial plateau lesion with respect to the accepted injury. *See* Reproduced Record (R.R.) at 229a. These are the findings on which Mr. Newlin relied in making his payment decisions.

Petitions, the Petitions must fail." *Id.* at 4. Claimant now appeals to this Court.[3]

■ Claimant argues that it was legal error for the Board to affirm the WCJ's decision where it was not "well-reasoned" due to erroneous interpretation of medical evidence. We agree. To be clear however, there is no requirement in the law that the WCJ's decision be "well-reasoned" in the sense that a reviewing court agrees with the reasoning offered; the requirement is that the decision be "reasoned" within the meaning of Section 422(a) of the Act.[4]

> To constitute a reasoned decision within the meaning of Section 422(a), a WCJ's decision must permit adequate appellate review. Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. '[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review.'

*Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.),* 893 A.2d 191, 194–95 (Pa.Cmwlth.2006) (quoting *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.),* 574 Pa. 61, 78, 828 A.2d 1043, 1053 (2003)) (citations and footnote omitted). The reasoned decision requirement is simply that the WCJ must articulate some objective reasoning to facilitate appellate review of the same. Here, it is clear that the WCJ has done that, as the objective reasoning is noted above. The decision is a reasoned one which does, indeed, facilitate effective appellate review.

■ Now, while the law does not require that a decision be "well reasoned," it does require that the decision be free from abuse of discretion, and free from material legal error. We conclude that such error was, in fact, made below in assessing the import of Dr. Carson's credited testimony. The fundamental problem with the WCJ's analysis below is the erroneous presupposition that use of the term "degenerative" automatically rules out a finding of causal connection to a prior work injury. Clearly, it does not.

■ On several prior occasions, this Court has established the principle that mere reference to the "degenerative nature" of a claimant's injury is insufficient in ruling out work-relatedness, as this Court has made the determination that a degenerative condition may be activated or accelerated by work-related trauma. In other words, degenerative changes may be attributable to a claimant's work injury. *See e.g., City of Phila. v. Workers' Comp. Appeal Bd. (Brown),* 830 A.2d 649 (Pa. Cmwlth.2003) (affirming a Board and WCJ determination that a claimant suffered a work-related acceleration of a pre-existing degenerative joint disease of the left knee,[5]

---

**3.** "Appellate review in workers' compensation proceedings is limited to determining whether constitutional rights have been violated, an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence." *Universal Am–Can v. Workers' Comp. Appeal Bd. (Minteer),* 563 Pa. 480, 486 n. 2, 762 A.2d 328, 331 n. 2 (2000).

**4.** 77 P.S. § 834.

**5.** Notably, in *Brown,* the credited medical diagnosis was somewhat similar to the diagnosis at issue in the instant matter. There, the credited medical expert testified:

> I felt that she had degenerative disease, which was wear and tear over time, and as per her history and review of the notes, I feel that the two injuries that she had sustained and exacerbated her degenerative disease, again, possibly tearing the meniscus or worsening the chondral region, but it's still my opinion if we were able to arthroscope her, we would have a definitive diagnosis.

and the resulting payment of total disability benefits); *Sewell v. Workers' Comp. Appeal Bd. (City of Phila.),* 772 A.2d 93 (Pa.Cmwlth.2001) (reversing a Board decision in part where testimony that the WCJ credited, opining that work-related trauma set the claimant's degenerative arthritis in motion, supported only an award of benefits to the claimant); *Galbreath v. Workmen's Comp. Appeal Bd. (Gordon),* 156 Pa.Cmwlth. 378, 627 A.2d 287, 290 (1993) (affirming the reinstatement of benefits for the recurrence of a ten-year-old work-related back injury where, "it was a long-term problem that degenerated and got worse with time when neglected," and the claimant's initial work accident was "the major cause of her problem"); *City of Phila. v. Gaudreau,* 13 Pa.Cmwlth. 584, 320 A.2d 424, 425 (1974) (affirming the reversal of a Civil Service Commission decision by the Court of Common Pleas of Philadelphia County in a service-connected disability case, where the Commission's determination of non-service connection regarding a claimant's degenerative joint disease was inconsistent with accepted medical testimony which was "the only testimony concerning causation").

As aptly stated in *Gaudreau,* a diagnosis that a condition is "degenerative" merely describes the condition, and does not, in itself, address the issue of causation. Somehow the Board and WCJ have missed that point in this case, and have failed to distinguish between degenerative disability produced by work-related trauma, and degenerative disability which is not related to Claimant's work. Clearly, Dr. Carson testified that Claimant's degenerative disability is the natural progression of her original work injury. *Supra.* In failing to recognize the distinction between degenerative disability produced by work-related trauma and non-work-related degenerative

830 A.2d at 652.

disability, the WCJ erred by misreading Dr. Carson's testimony and misapplication of the law as a result.

This Court addressed a similar misreading of medical testimony in *Sewell.* There the claimant sustained separate slip and fall type injuries resulting in pain in his left hip in 1988 and 1991 respectively. Then in 1994, the claimant began to experience disabling pain in the same hip, forcing him to stop working in 1995. His medical expert's final diagnosis was "traumatic work-related degenerative disease of the left hip." *Id.* at 95. Consistently, the employer's medical expert also diagnosed degenerative joint disease of the left hip, and testified that a series of repetitive traumas to the hip at work set in motion a progressive degenerative process. He explained: "if you have [underlying] degenerative joint disease and you get trauma to a joint, it can ... in a large majority of the cases, cause the degenerative disease to hasten or speed up over time." *Id.* at 96. As in this case, the WCJ found the latter expert to be credible, but nonetheless denied the claimant's claim on the basis that the claimant failed to establish a disabling work injury. This Court ultimately reversed the denial, reasoning as follows.

> The WCJ appears to have likewise misread the testimony of Dr. Muller. The WCJ determined that 'Dr. Muller emphasized that the degenerative changes documented on the x-rays were not attributable to a work injury.' However, as the testimony quoted above demonstrates, Dr. Muller opined that Sewell's work-related traumas aggravated Sewell's degenerative arthritis and set it in motion. No reasonable mind could rely upon this testimony to conclude that Sewell's degenerative changes were not attributable to his work injury. Accord-

ingly, the WCJ's findings regarding Dr. Muller's testimony are not supported by substantial evidence.... Because the testimony which the WCJ credited does not support the WCJ's decision but rather supports only an award of benefits to Sewell, the Board's order is reversed with regard to Sewell's claim petition, and this case is remanded for an appropriate award of benefits.

*Id.* at 97–98 (citations omitted).

Likewise in this case, the WCJ misread Dr. Carson's testimony and implicitly determined that the degenerative changes at issue were not attributable to a work injury, while the above-quoted testimony demonstrates that Dr. Carson clearly opined that work-related trauma set Claimant's degenerative condition in motion. Here, as in *Sewell,* "no reasonable mind could rely upon this testimony to conclude that [Claimant's] degenerative changes were not attributable to his work injury." *Id.* at 97. Yet, in this case, the WCJ did just that in her misapplication of the law to Dr. Carson's credited medical opinion. The Board's subsequent conclusions that the WCJ found Dr. Carson's opinion not credible, and that Claimant, therefore, failed to present any credible evidence, served only to compound the error. Clearly, the WCJ found Dr. Carson to be credible, and his testimony does not support the WCJ's decision. Thus, we hold that the Board erred in affirming the WCJ's denial of Claimant's reinstatement petition.

■ Claimant next argues that the Board erred as a matter of law in affirming the WCJ's decision without addressing the WCJ's erroneous rejection of the testimony of Claimant's unrebutted medical expert. More specifically, Claimant argues that rejection of medical expert testimony without countervailing expert opinion amounts to capricious disregard. While we do not agree with Claimant's character-

ization of the application of the capricious disregard standard, we nonetheless conclude that the WCJ capriciously disregarded Dr. Carson's testimony.

Although generally a [WCJ] may disregard the testimony of any witness, even though the testimony is uncontradicted, he does not have the discretion to capriciously disregard competent evidence without a reasonable explanation or without specifically discrediting it.... At the very least the findings and conclusions of the fact finder must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of underlying principles of substantive law to that evidence.... When a [WCJ] rejects uncontradicted evidence and makes findings or conclusions which have no rational basis in the evidence of record, that [WCJ] capriciously disregards competent evidence. Simply stated, a[WCJ] may not 'reject' credible and uncontradicted medical evidence without explaining why the evidence is 'rejected.'

*Acme Markets, Inc. v. Workmen's Comp. Appeal Bd. (Pilvalis),* 142 Pa.Cmwlth. 400, 597 A.2d 294, 296–97 (1991) (citations omitted). Moreover, "[a] capricious disregard of evidence occurs ... when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works),* 862 A.2d 137, 145 (Pa.Cmwlth.2004).

Affirming the WCJ's decision to reject Dr. Carson's testimony, the Board concluded:

Where the findings of fact reflect a disregard of competent evidence that logically could not have been avoided in reaching the eventual decision, the findings represent a capricious disregard of competent evidence. *Higgins v. Workers' Compensation Appeal Board (City of Philadelphia),* 854 A.2d 1002 (Pa.

Cmwlth.2004). Here, however, there is no disregard of competent evidence. The WCJ rejected the testimony of Dr. Carson because the WCJ noted "Dr. Carson characterized Claimant's injuries as degenerative in nature" and, as such, "Claimant failed to present clear and convincing evidence to support her Petitions."

Bd. Op. at 5 (citing FoF No. 13). We disagree with the Board's analysis.

As the Board noted, the WCJ did attempt to explain why she rejected Dr. Carson's testimony in this case, so it cannot be said that she ignored the evidence. However, as explained above, the WCJ's rejection of Dr. Carson's testimony was the result of her misapplication of the law. Thus, the WCJ's findings and conclusions did not have a rational basis in the evidence of record, and did not demonstrate correct application of underlying principles of substantive law. In that sense, the WCJ's mishandling of Dr. Carson's testimony did amount to a capricious disregard of competent evidence. *Acme Markets, Inc.* As stated, the Board erred by affirming the WCJ's denial of Claimant's reinstatement petition given the WCJ's misapplication of the law.

■ Next, Claimant argues that the WCJ erroneously relied on the testimony of Mr. Newlin, a lay witness, to establish the lack of a causal connection between medical treatment and billing. We note that Mr. Newlin's testimony was offered for the purpose of defending Claimant's penalty petitions, i.e., establishing Employer's reasonable basis for concluding that there was a lack of causal relationship between Claimant's work-related injuries and medical treatment, not for the purpose of establishing a lack of causal relationship between her current injuries and work-related injuries. We discern no error in the WCJ's acceptance of Mr. Newlin's tes-

timony for that purpose. The WCJ based her decision concerning causation of Claimant's disability, however, on her erroneous assessment of the import of Dr. Carson's testimony.

Lastly, Claimant argues that the WCJ improperly applied a heightened burden of proof by requiring Claimant to prove more than disability resulting from the progressive degeneration of her work-related injuries. The prior analysis is sufficient to address Claimant's concerns in this regard. The WCJ simply misinterpreted the credited medical testimony, thus it was error on the part of the Board to affirm the WCJ's decision.

For the foregoing reasons, we vacate the Board's order and remand for a new decision by a WCJ in accordance with this opinion.

### ORDER

AND NOW, this 22nd day of August, 2011, the October 28, 2010 order of the Workers' Compensation Appeal Board is vacated. The matter is remanded for a new decision by a WCJ in accordance with this opinion.

Jurisdiction relinquished.