**Joseph P. McCOOL, Sr., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SUNOCO, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 23, 2013.

Decided Oct. 18, 2013.

Joseph P. McCool, Sr., pro se.

Thomas C. Lowry, Plymouth Meeting, for respondent Sunoco, Inc.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Joseph P. McCool, Sr. (Claimant), pro se, petitions this Court for review of the Workers' Compensation Appeal Board's (Board) March 8, 2013 order affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's claim petition. Claimant essentially presents three issues for this Court's review: (1) whether the WCJ incorrectly placed the burden of proving exposure to hazardous noise on Claimant, (2) whether the WCJ's decision is supported by competent evidence and is consistent with appellate authority, and (3) whether the WCJ issued a reasoned decision or capriciously disregarded the record evidence. We affirm.

Claimant was employed by Sunoco, Inc. (Employer) as an operator apprentice and later a refinery operator for five years ending March 20, 2008. Prior to that employment, from November 1983 through October 1998, Claimant was a Philadelphia firefighter during which time he was exposed to noise. Between his firefighter position and his job with Employer, he worked three office jobs.[1]

As Employer's operator apprentice and then refinery operator, Claimant was exposed to extreme noise created by the numerous pieces of equipment in the refinery, and significant noise outside the refinery from pumps and miles of piping with product going through it. Steam leaks were a constant problem, and there was a high-pitched whistle at times. Claimant cleaned filters on six-story high heaters, and took crude oil off barges and out of the pipelines. He also started the initial refinery process, which required an extreme amount of heat and caused tremendous noise in separating the various crude oil components. Claimant spent almost all of his 12–hour shifts outside. He would occasionally report to the block house, where the restroom and kitchen facilities were located. Claimant's block house was

---

1. Specifically, Claimant worked for the "Pennsylvania Turnpike Commission as a director of safety in their [sic] operations center[;]" he was employed briefly by the "U.S. Department of Health and Human Services as an auditor[;]" and he worked "a couple years as an accountant county supervisor for PFPC, which is a subsidiary of PNC Bank." Notes of Testimony, November 16, 2010 at 8.

extremely noisy as compared to most of Employer's other block houses because it housed various electronic equipment which contained fans and motors, and it was located adjacent to the product manifold where all the different piping lines came in and were distributed.

Employer furnished and required the use of personal protective equipment, especially hearing protection. Employer provided approximately one dozen different types of hearing protection for its employees' use. Claimant was informed that he did not have to wear earplugs in the block house, so he only wore them when he was outside. Claimant and his co-workers communicated inside and outside the refinery via walkie-talkie. About a year before Claimant stopped working for Employer, he wore headphones with hearing-protective plugs that permitted him to communicate without a walkie-talkie. He resigned his employment with Employer on March 20, 2008.

In April 2001, an attorney was undertaking to represent a number of Philadelphia firefighters to bring hearing loss claims against the City of Philadelphia. As part of this group, Claimant had an audiogram through the firefighter's union. In May 2001, Claimant mentioned to his attorney that the union was pursuing the above hearing loss claims, and as a result of this conversation, Claimant saw Dr. Allen Gold (Dr. Gold). Dr. Gold's audiogram report showed an American Medical Association (AMA) impairment, but it was not sufficient enough to bring a hearing loss claim. Claimant also took a pre-employment audiogram for Employer in December 2002,

and then a yearly audiogram thereafter with Employer, i.e., November 2003, November 2004, October 2005, and September 2007. The 2002 audiogram revealed a pre-existing hearing loss that continued to accelerate across all frequencies at each yearly retest. In 2006 or 2007, Claimant was referred to Dr. Stuart Scherr (Dr. Scherr), an ear, nose and throat physician, by his family doctor at Claimant's request. As a result of said referral, Claimant started wearing a hearing aid.[2]

On July 7, 2010, Aaron L. Shapiro, M.D. (Dr. Shapiro), an ear, nose and throat specialist, evaluated Claimant at the request of his attorney. Dr. Shapiro issued a medical report dated August 2, 2010, wherein, he stated that Claimant's occupational hearing loss was attributable to his firefighter duties. On October 4, 2010, Dr. Shapiro issued a second medical report, wherein, he opined that Claimant's occupational hearing loss was due to his work with Employer.

On October 11, 2010, Claimant filed a claim petition alleging bilateral occupational hearing loss as a result of his employment with Employer. On April 14, 2011, a WCJ held a hearing on Claimant's petition. On October 7, 2011, the WCJ denied and dismissed Claimant's claim petition. Claimant appealed to the Board and, on March 8, 2013, the Board affirmed the WCJ's order. Claimant appealed to this Court.[3]

 Claimant argues that the WCJ incorrectly placed the burden of proving exposure to hazardous noise on Claimant. We disagree.

---

2. On cross-examination, Claimant testified that he had two instances of gout. He also believes that he had a fractured skull as a younger person and was involved in an accident with a head injury about 50 years ago.

3. "This Court's scope and standard of review of an order of the Board is limited to deter-

mining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed." *World Kitchen, Inc. v. Workers' Comp. Appeal Bd. (Rideout)*, 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009).

The requirements for establishing a claim to [sic] benefits for work-related hearing loss are set forth in Section 306(c)(8) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513. The burden of proof is on the claimant to establish that he suffers from a permanent hearing loss of 10 percent or greater that is medically established to be work-related and caused by the long-term exposure to hazardous occupational noise. Whether the employee has, in fact, been exposed to hazardous occupational noise is not part of the claimant's burden of proof. Instead, the employer may assert as an affirmative defense that the claimant's exposure to such noise was not hazardous or long-term.

*Flatley v. Workers' Comp. Appeal Bd. (Mallinckrodt Chem., Calsicat Div.),* 803 A.2d 862, 866–67 (Pa.Cmwlth.2002) (footnote omitted).

 Here, it is undisputed that Claimant suffers a permanent bilateral hearing loss greater than 10%. However, the WCJ rejected Claimant's testimony as not credible as to when he knew that his hearing loss was work-related because he had previously conferred with attorneys and had his hearing tested to explore a potential hearing loss claim arising out of his employment as a Philadelphia firefighter. WCJ Dec. at 5. In addition, the WCJ found Claimant's testimony unpersuasive as to why he sought repeated testing and treatment from Dr. Scherr.[4] *Id.* Moreover, the WCJ found Claimant's witness, Dr. Shapiro, not credible because he issued two conflicting medical reports each blaming a different employer for Claimant's

hearing loss. *Id.* Rather, the WCJ credited the testimony of Lee D. Rowe, M.D. (Dr. Rowe), Employer's physician, that Claimant's hearing loss was not due to occupational noise exposure because Dr. Rowe's opinions were supported by his examination of Claimant, the detailed history he obtained from Claimant and his thorough review of Claimant's multiple audiograms over the years. WCJ Dec. at 6.

At his deposition Dr. Rowe testified that he conducted an evaluation of Claimant on February 17, 2011. He took a detailed history from the Claimant, performed a physical exam, conducted an audiogram and also reviewed and commented on extensive medical records including prior audiograms performed from 1992 through 2010. He explained that in the instant case where Claimant had a history of a past skull fracture at a young age, this can cause damage to the auditory nerve that carries the sound from the inner ear to the brain and manifests itself later in life with progressive hearing loss.

Dr. Rowe stated that the physical examination revealed normal findings. The audiogram showed that there was a significant difference in the hearing in the high frequencies between the left ear which was far worse than that of the right ear. He calculated Claimant's binaural hearing handicap pursuant to AMA Guidelines to be 52.5%. He stated that this loss was a significant acceleration of Claimant's hearing handicap during the short time period from Dr. Shapiro's July 7, 2010 audiogram.

Dr. Rowe also reviewed and commented on medical records including audiograms from Dr. Scherr, Dr. Gold, Dr. Joan Lambert,[5] and Anne Bangor, R.N.[6] He noted

---

4. Claimant sought out Dr. Scherr in 1997 for an ear infection and continued to see him for "routine medical checkups for hearing" through December 2009. Notes of Testimony, November 16, 2010 at 40.

5. Dr. Joan Lambert is Claimant's primary care physician.

6. Anne Bangor, R.N. performed an audiogram for Hearing Health on August 28, 2000.

that Claimant's pre-employment audiogram for Employer showed no AMA impairment. He explained that the audiograms taken after Claimant stopped working at the fire department but prior to the pre-employment audiogram with Employer showed the beginning of an acceleration process that was not due to noise exposure and that this progression of his hearing loss accelerated during his employment with Employer. He stated that when Claimant stopped working on March 20, 2008, there was a continuation of the same acceleration of hearing loss that was previously occurring unrelated to noise exposure. Dr. Rowe concluded that Claimant did not suffer a compensable hearing loss due to noise exposure at Employer. He based Claimant's hearing loss on a number of factors, including that Claimant indicated his hearing loss started between 2005 and 2006 when he was 53–54 years old consistent with age-related hearing loss. He explained that during his employ at Employer, Claimant wore hearing protection at all times except when he entered the block house and that the Max foam earplugs worn by Claimant provided more than adequate protection.

Dr. Rowe further noted that Claimant had asymmetrical hearing loss in the left ear with an antecedent history of head trauma at age seven or eight with associated skull fracture and loss of consciousness. He declared that the asymmetry was not consistent with occupational noise induced hearing loss. Claimant had other significant risk factors that allowed the hearing loss to progress including diabetes, elevated cholesterol and triglycerides. Dr. Rowe expressed that the actual changes in Claimant's hearing impairment started to arise during the period after he left the fire department and prior to starting with Employer. Claimant's post-Employer audiograms in 2008 and 2009 by Dr. Scherr, Dr. Shapiro's July 2010 audiogram, and his own audiogram in 2011 demonstrated a dramatic increase from 35.6% AMA impairment to 52.5% AMA impairment, which is inconsistent with occupational noise induced hearing loss.

Based on Dr. Rowe's testimony, the WCJ determined that "Claimant did not sustain a compensable hearing loss due to noise exposure occurring during his employment with [Employer]." WCJ's Dec. at 6. "Because the WCJ is the ultimate fact finder and determiner of credibility," and he found Dr. Rowe credible, the Board properly concluded that Claimant did not meet his burden of proving a compensable hearing loss. *Washington Steel Corp. v. Workers' Comp. Appeal Bd. (Waugh)*, 734 A.2d 81, 84 (Pa.Cmwlth.1999).

◼ Claimant next argues that the WCJ's decision is not supported by competent evidence or consistent with appellate authority. Specifically, Claimant contends that the WCJ[7] erred by accepting Employer's medical testimony that attributed his hearing loss to the aging process because the Pennsylvania Supreme Court rejected such defense in *LTV Steel Co. v. Workers' Compensation Appeal Board*, 562 Pa. 205, 754 A.2d 666 (2000). We disagree.

We acknowledge that the *LTV Steel Co.* Court held:

> Because there is no way to distinguish, scientifically or mathematically, the amount of hearing loss caused by acoustic trauma from that caused by the aging process, and Act 1 provides for no standard to measure presbycusis, we

---

7. Claimant refers to the Board however, "[t]he WCJ is the ultimate fact finder in workers' compensation cases...." *Lewis v. Work-*ers' *Comp. Appeal Bd. (Andy Frain Servs., Inc.)*, 29 A.3d 851, 856 (Pa.Cmwlth.2011).

find that Act 1 of 1995 **does not permit a deduction** from a claimant's total binaural hearing impairment for that portion of the impairment caused by presbycusis. Therefore, you can not [sic] deduct that portion of the impairment caused by presbycusis from the total binaural hearing impairment.

*Id.* at 226, 754 A.2d at 677 (footnote omitted; emphasis added). However, Dr. Rowe did not allocate a portion of Claimant's hearing loss to presbycusis and another portion to occupational noise exposure. Rather, Dr. Rowe opined: "It's my opinion that this did not constitute a hearing loss under the [Act], nor is it my opinion that there's any evidence of a hearing loss during that period secondary to occupational noise exposure at [Employer]." Rowe, Notes of Deposition Testimony, May 6, 2011 at 46–47. Dr. Rowe's testimony supports the WCJ's findings that Claimant's hearing loss was not caused by hazardous exposure to occupational noise. Accordingly, the WCJ's decision is supported by competent evidence and reconciles with *LTV Steel Co.*

 Lastly, Claimant argues that the WCJ's decision was not reasoned because the WCJ capriciously disregarded the record evidence, including Employer's own hearing tests and medical records, and did not state his reasons therefor. We disagree.

[A]s fact finder, the WCJ is not required to accept even uncontradicted testimony. Capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence. We emphasize our Supreme Court's pronouncement that, where there is substantial evidence to support an agency's factual findings, and those findings in turn support the con-

clusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence.

*Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works)*, 862 A.2d 137, 144 (Pa.Cmwlth.2004) (citations omitted). Further,

[t]o constitute a reasoned decision within the meaning of Section 422(a) [of the Act], a WCJ's decision must permit adequate appellate review. Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. [S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review.

*Green v. Workers' Comp. Appeal Bd. (U.S. Airways)*, 28 A.3d 936, 940 (Pa.Cmwlth. 2011) (quotation marks omitted).

 Here, the WCJ gave a detailed explanation of the evidence presented, as well as the reasons for his credibility determinations. Regarding Claimant's testimony, the WCJ specifically stated:

This Judge has reviewed and considered the entire testimony of Claimant. Claimant credibly testified that while working for [Employer] outside in the noisiest areas that he always wore hearing protection. Claimant's testimony is not credible as to when he knew that his hearing loss was caused in part from his employment as he had previously conferred with attorneys and was sent to physicians for testing to explore potential hearing loss claims arising out of his firefighting duties. This contradicts his contention that the first time a physician advised him that his hearing loss was work-related was Dr. Shapiro. Claimant is also not persuasive as to why he

sought repeated testing and treatment from Dr. Scherr, an ear, nose and throat physician.

WCJ Dec. at 5. Concerning Dr. Shapiro's testimony, the WCJ expressed:

This Judge has reviewed and considered the entire deposition of Dr. Shapiro and finds him to be not credible. Significantly, Dr. Shapiro issued two conflicting medical reports that each blamed a different employer for Claimant's hearing loss due to noise exposure. Furthermore, even though Dr. Shapiro does not mention in his first report Claimant's employment with [Employer] as a refinery operator, his own handwritten notes that were made at the time of the evaluation on July 7, 2010, clearly show that Claimant reported his work at the refinery and the mandatory wearing of hearing protection. He admittedly did not take a detailed history from Claimant before reaching his conclusions.

*Id.* Lastly, considering Dr. Rowe's testimony, the WCJ declared:

This Judge has reviewed and considered the entire deposition of Dr. Rowe and finds him to be credible. His opinions are supported by his examination of Claimant, the detailed history he obtained from Claimant, and his thorough review of Claimant's multiple audiograms over the years. His opinion that Claimant did not sustain a compensable hearing loss caused by noise while working for [Employer] is credible. He persuasively explained that hearing loss caused by noise ends with the removal of the individual from the noisy environment and the damage does not progress into the future, which is not what has occurred with Claimant whose hearing loss has dramatically progressed after he left [Employer]....

WCJ Dec. at 6.

 "[T]he fact that a WCJ may not reiterate and/or pass specific review upon any particular line or portion of testimony does not necessarily constitute a capricious disregard thereof." *Williams,* 862 A.2d at 145–46. Moreover, "[t]he reasoned decision requirement is simply that the WCJ must articulate some objective reasoning to facilitate appellate review of the same." *Green,* 28 A.3d at 940. The WCJ's decision which includes lengthy summations of the respective witnesses' testimony clearly reveals that the WCJ considered the full testimony of all the witnesses and he set forth his objective reasons for his conclusions. Accordingly, this argument is without merit.

For all of the above reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 18th day of October, 2013, the Workers' Compensation Appeal Board's March 8, 2013 order is affirmed.