IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trina Smith,                          :
                    Petitioner        :
                                      :
        v.                            :    No. 1201 C.D. 2020
                                      :    Submitted: April 16, 2021
City of Philadelphia (Workers'        :
Compensation Appeal Board),           :
                    Respondent        :


BEFORE:        HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: August 10, 2021


        Trina Smith (Claimant) petitions for review of an adjudication of the
Workers' Compensation Appeal Board (Board) that refused to add psychological
injuries to her accepted work injury; allowed the addition of some physical injuries;
and granted the City of Philadelphia's (Employer) termination petition. In doing so,
the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that
Claimant had fully recovered from her work-related injuries. Upon review, we
affirm.

## Background

        Claimant worked for Employer as a deputy sheriff. On November 8,
2016, while struggling with a suspect she was taking into custody, she was injured.
Employer issued a Notice of Compensation Payable (NCP) describing the work
injury as "contusion/neck, head, back." Certified Record (C.R.), Item 38, at 3.

On October 24, 2017, Claimant filed a review petition alleging that Employer's description of her work injury was incorrect because she sustained injuries "far more involved." C.R., Item 2, at 1. On November 10, 2017, Employer filed a termination petition, alleging that Claimant had fully recovered from her work injuries and could return to work as of September 7, 2017. On May 9, 2018, Claimant filed a second review petition alleging that her work injuries had evolved to include depression, anxiety, post-traumatic stress disorder (PTSD) "or similar mental consequences due to the work incident." C.R., Item 11, at 1. On August 14, 2018, Employer issued an amended NCP describing the nature of the work injury as a "contusion" and the part of the body affected as "multiple head injur[ies]." C.R., Item 38, at 1. The above-referenced petitions of Claimant and Employer were consolidated, and a WCJ conducted hearings thereon.

In support of her review petitions, Claimant testified in person before the WCJ on January 9, 2019, and submitted a transcript of her testimony before a Heart and Lung panel[1] on January 10, 2018. Claimant's testimony is summarized as follows.

Claimant had been employed as a deputy sheriff for 20 years. On November 8, 2016, while taking a suspect into custody in a courtroom, Claimant was thrown into a low wall by the suspect. Another officer attempted to assist Claimant and, in doing so, he fell onto Claimant. The incident caused immediate pain in Claimant's left side, from ankle to neck, as well as in her hands and the back of her head.

Since December of 2016, Claimant has treated with Dr. Adina Dees, M.D., an Employer-approved family medicine practitioner. Dr. Dees has

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638, commonly known as the Heart and Lung Act.

coordinated Claimant's specialty care including hip injections and a left wrist surgery performed in June 2017.

Claimant testified before the City's Heart and Lung panel that she had preexisting pain "on and off" in her left low back. Heart and Lung Hearing Transcript, 1/10/2018, at 6 (H.T.__); Reproduced Record at 74a (R.R. __). She was diagnosed with fibromyalgia in 2003 or 2004, which caused pain in her left hip and back, as well as "all over [her] body." H.T. 18, 21; R.R. 86a, 89a. She injured her back in a 2010 motor vehicle accident. Claimant testified that she continues to experience pain from her work injuries; cannot return to her pre-injury position; and cannot do light-duty work. She reported that she was taking medications for pain and anxiety.

In her testimony before the WCJ on January 9, 2019, Claimant stated that she no longer has problems with her head, neck, left shoulder, or left ankle.[2] However, she still has pain in her left wrist and arm. Claimant had sacroiliac surgery in June 2018, and she has received injections in her left hip, but they did not resolve the pain. Claimant testified that she could not return to her pre-injury job due to pain and disability.

_____

[2] Claimant testified:

> [Counsel:] Do you still have headaches or any problems with your head?
> [Claimant:] No.
> [Counsel:] Any problems with your neck, presently?
> [Claimant:] No.
> ***
> [Counsel:] Do you still have any issues with regard to a left ankle sprain?
> [Claimant:] No.
> [Counsel:] With regard to your left shoulder, are you recovered from your left shoulder?
> [Claimant:] Yes.

Notes of Testimony (N.T.), 1/9/2019, at 26, 38; R.R. 146a, 158a.

Claimant acknowledged that prior to the work incident, she had been treated for low back and left hip pain and radiculopathy in both legs, which were caused by fibromyalgia. She also acknowledged that since 2010, she has been treated for anxiety and depression. After the work injury, Claimant had dreams about the courtroom incident and has experienced anger with Employer, its doctors, and the legal process. Her treatment with a therapist reduces her stress level.

Claimant presented the deposition testimony of Dr. Dees, who is board certified in family medicine. Dr. Dees first saw Claimant on December 23, 2016, and obtained a history of her work injury. Based on her examination of Claimant and a review of her diagnostic tests, Dr. Dees concluded that Claimant suffered from lumbar radiculopathy and sprains of her neck, left shoulder, left wrist and hand, right middle finger, left hip, and left ankle, all related to the 2016 work incident.

Dr. Dees testified that an arthrogram of Claimant's left wrist showed a triangular fibrocartilage complex (TFCC) tear, for which Claimant underwent a surgery in June 2017. By December 2017, Claimant's left shoulder and left ankle improved; her left hand and wrist pain remained the same; and her left hip pain became worse. A magnetic resonance imaging scan (MRI) of Claimant's left hip in January 2017 showed gluteal tears, bursitis, and a degenerative labral injury, for which Claimant underwent diagnostic injections and a sacroiliac surgery in June 2018. Dr. Dees testified that Claimant's work injury included a left wrist TFCC tear, left hip bursitis, left gluteal tears, and coccyalgia.

Dr. Dees opined that Claimant has recovered from the sprains in her neck, right middle finger, and left ankle. However, she has not recovered from the work injuries to her left wrist, left hip, and left low back and cannot return to her

4

pre-injury job. On March 2, 2018, Claimant showed signs of possible PTSD caused by the work incident, and Dr. Dees referred her for psychotherapy.

On cross-examination, Dr. Dees admitted that she did not review Claimant's medical records from her primary care provider. When shown Claimant's medical records from several providers for the first time during the deposition, Dr. Dees testified that the records did not change her opinions. Dr. Dees acknowledged that the surgical notes from a left wrist arthroscopy performed by a surgeon at Nazareth Hospital found Claimant's left wrist "completely intact" and did not report a TFCC tear. N.T., 7/27/2018, at 47; R.R. 233a. *See also* C.R., Item 26, at 1. She also admitted that an electromyography (EMG) was normal and showed no signs of lumbar radiculopathy. Dr. Dees acknowledged that she did not review the films associated with the diagnostic tests, only the reports.

Claimant submitted a note from her June 2018 sacroiliac surgery; it reported "[sacroiliac] joint dysfunction" for which she received a "navigated left minimally invasive sacroiliac fusion." C.R., Item 27, at 1. The note also stated that Claimant injured her back during an altercation on November 8, 2016, which caused constant aching in her low back.

Claimant submitted the deposition testimony of Anna O'Brien, a licensed professional counselor and board-certified art therapist, who began treating Claimant on February 13, 2018. Claimant reported "vivid dreams" of trying to take someone into custody in a courtroom, who then grabbed her gun and shot her. N.T., 10/4/2018, at 22; R.R. 301a. Claimant also reported that she was angry about Employer's providers and the legal process. O'Brien diagnosed Claimant with PTSD caused by the work incident.

5

In support of its termination petition, Employer presented the deposition testimony of Jack Abboudi, M.D., a board-certified orthopedic surgeon, who did an independent medical examination (IME) of Claimant on September 7, 2017. He also reviewed Claimant's medical records. The November 11, 2016, x-rays of Claimant's left elbow and wrist were normal. The MRIs of her left shoulder and left wrist, done on December 2, 2016, were negative except for minor soft tissue swelling on her upper extremities. The December 2016 x-rays of her right hand were negative. An MRI arthrogram of Claimant's left wrist done on January 27, 2017, was "essentially normal" except for possible minor TFCC tearing or fraying synonymous with a sprain or strain. N.T., 2/7/2018, at 25-26; R.R. 385a-86a. The left wrist arthroscopy performed on June 7, 2017, however, showed an intact TFCC. In other words, Dr. Abboudi explained, the arthroscopy "directly [and] physically look[ed] inside the wrist" and showed "nothing abnormal about this wrist." N.T., 2/7/2018, at 28-29; R.R. 388a-89a. Finally, an MRI arthrogram of Claimant's left shoulder performed on March 8, 2017, showed no structural issues.

Claimant complained to Dr. Abboudi of pain in her left hand and wrist, but he found no objective evidence to support her complaint. Her left hand had good range of motion. Her grip strength testing showed invalid effort. Dr. Abboudi opined that Claimant's work injuries to her upper extremities included a right middle finger contusion; left elbow contusion; left shoulder contusion; and left wrist sprain and strain. He opined that Claimant was fully recovered from those work injuries and could perform her pre-injury job without restrictions.

Employer also submitted the deposition testimony of Stuart L. Gordon, M.D., a board-certified orthopedic surgeon, who did an IME of Claimant on August 31, 2017. Dr. Gordon obtained a history of the work injury and reviewed Claimant's

6

medical records, including the films of the two MRIs of her left hip and sacroiliac joint done in January and June of 2017. The MRI of January 2017 was normal except for a mild bursal change and tendinosis. The MRI of June 2017 was performed with arthrogram dye injected into the hip joint, and the result was "completely normal." N.T., 2/28/2018, at 17; R.R. 507a. Dr. Gordon testified that he did not observe sacroiliac joint dysfunction or inflammation on the MRI films and opined that Claimant did not need sacroiliac surgery. Claimant's low back MRI of December 2016 did not show an acute injury but, rather, degenerative changes at the L4-5 level, which were also seen in a 2012 MRI. The MRIs and EMG did not show lumbar radiculopathy. Claimant's medical records reported a diagnosis of fibromyalgia in 2007 and treatment with anti-depression medication.

At the time of Dr. Gordon's examination, Claimant complained of pain in her low back, left buttock, and left hip, and pain going down her left leg to her ankle, but she stated that the ankle was not an issue. Dr. Gordon's examination indicated that Claimant's neck, left shoulder, low back, left hip, coccygeal area, and left leg were normal with good strength. She tested negative for sciatica and sacroiliac joint dysfunction. There was no indication of lumbar spasm and no objective findings of bursitis or neurologic issues. Dr. Gordon found no objective explanation for Claimant's complaints of back and hip pain and observed exaggerated pain responses during his examination.

Based on Claimant's history, the physical examination, and review of the medical records, Dr. Gordon opined that Claimant's work injuries included soft tissue contusions to and strains of the neck, left shoulder, low back, left hip, and left ankle. Dr. Gordon opined that Claimant is back to her pre-injury baseline, which included her longstanding fibromyalgia and radiculopathy complaints. He found

7

Claimant fully recovered from her work injuries and able to return to her pre-injury job.

Employer also submitted the deposition testimony of Richard Sobel, M.D., a board-certified psychiatrist, who examined Claimant on August 21, 2018. Dr. Sobel took a history and reviewed her medical records. Claimant had a preexisting history of anxiety and depression. The first mention of nightmares in Claimant's medical records appeared in February 2018. During Dr. Sobel's examination, Claimant reported anger with Employer's doctors, who did not support her, and embarrassment that she did not handle the situation in the courtroom that resulted in her work injury.

Dr. Sobel testified that Claimant's anger and embarrassment were feelings, not psychiatric conditions. He performed a mental status examination and concluded that Claimant did not meet the diagnostic criteria for PTSD or depression. Dr. Sobel testified that Claimant showed signs of adjustment disorder but explained that the onset of that disorder occurs within three months of a "stressor." N.T., 12/3/2018, at 34; R.R. 596a. Claimant's symptoms did not begin until February 2018. Even if the symptoms started in late 2017, Dr. Sobel would not relate them to the November 8, 2016, work incident. On cross-examination, Dr. Sobel stated that Claimant could benefit from psychiatric treatment even though she does not meet the classic criteria for a specific psychiatric diagnosis. He opined, however, that such treatment would not be related to the work incident.

## WCJ's Decision and the Board's Adjudication

The WCJ credited the testimony of Dr. Abboudi and Dr. Gordon over that of Dr. Dees. The WCJ found that Claimant's work injuries included contusions to and strains of her neck, left shoulder, left elbow, left wrist, right middle finger,

8

low back, left hip and left ankle. However, the work incident did not cause a right wrist or right shoulder injury, a TFCC tear of the left wrist, lumbar radiculopathy, a sacroiliac joint problem, left hip bursitis, left gluteal tear or coccyalgia. The WCJ found that Claimant had fully recovered from her work injuries as of September 7, 2017, the date Dr. Abboudi performed the IME. Based on Claimant's demeanor, the WCJ discredited her testimony that she continues to suffer pain caused by the work incident. The WCJ credited Dr. Sobel's testimony over O'Brien's because Dr. Sobel is a board-certified psychiatrist and fully explained his evaluation of Claimant. The WCJ found that Claimant did not sustain anxiety, depression, PTSD, or other mental consequences as a result of the November 8, 2016, incident at work.

As such, the WCJ granted, in part, Claimant's review petition to add several physical injuries; denied Claimant's review petition to add psychological injuries; and granted Employer's termination petition.

Claimant appealed, and the Board affirmed the WCJ's decision. The Board held that Claimant did not meet her burden of proving that she sustained work injuries, other than contusions and strains, through credible, unequivocal medical evidence. That the WCJ did not make findings "consistent with Claimant's preferred version of the facts" did not constitute a capricious disregard of evidence. Board Adjudication at 20. The Board held that substantial evidence supported the WCJ's findings that Claimant had fully recovered from the soft tissue injuries that were caused by the November 8, 2016, incident.

Claimant petitioned for this Court's review.

9

## Appeal

On appeal,[3] Claimant presents three issues for our consideration. First, Claimant argues that the Board erred because the WCJ did not issue a reasoned decision but, rather, capriciously disregarded relevant evidence. Second, Claimant argues that the Board erred in refusing to acknowledge work-related psychological injuries, which even Employer's expert acknowledged require treatment. Third, Claimant argues that the Board erred in denying her request to add the other physical injuries listed in her review petition to her work injury description and in granting Employer's termination petition.

## I. Reasoned Decision

In her first issue, Claimant argues that the WCJ ignored the "overwhelming evidence" of her ongoing pain symptoms. Claimant Brief at 23. Stated otherwise, Claimant argues that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act)[4] by

---

[3] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834. It states:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected

capriciously disregarding the record evidence and, instead, relying on equivocal medical evidence.

The WCJ is not required to accept evidence, even evidence that is not contradicted.

> Capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence. We emphasize our Supreme Court's pronouncement that, where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence.

*McCool v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 78 A.3d 1250, 1256 (Pa. Cmwlth. 2013) (quoting *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004)). Further,

> [t]o constitute a reasoned decision within the meaning of Section 422(a) [of the Act], a WCJ's decision must permit adequate appellate review. Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. [S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review.

---

for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

11

*McCool*, 78 A.3d at 1256 (quoting *Green v. Workers' Compensation Appeal Board (US Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011)). Here, the WCJ gave a detailed explanation of the evidence presented and the reasons for each credibility determination.

The WCJ explained that he did not credit Claimant's testimony that she continues to suffer work-related pain based on her demeanor. The WCJ further noted that Claimant admitted that she no longer had issues in her head, neck, shoulder, and left ankle. With respect to the expert evidence, the WCJ found Drs. Abboudi's and Gordon's testimony more credible because they are orthopedic surgeons. Dr. Dees, by contrast, has a specialty in family medicine. Further, Dr. Abboudi's testimony that Claimant did not sustain a TFCC tear in her left wrist was consistent with the surgical notes from Nazareth Hospital, which reported no evidence of a TFCC tear. Likewise, Dr. Gordon's opinion that Claimant did not sustain a sacroiliac joint injury was consistent with his physical examination and the MRI films. By contrast, Dr. Dees did not have a complete and accurate history of Claimant's preexisting conditions, such as her fibromyalgia, anxiety and depression. Dr. Dees was unaware that the degenerative changes at the L4-5 level shown in the lumbar MRI report of December 2016 were also shown in the 2012 MRI report. Finally, the WCJ credited Dr. Sobel's testimony over O'Brien's because Dr. Sobel is a board-certified psychiatrist, and he "provided a detailed explanation of the reason for his opinions[.]" WCJ Decision, 5/16/2019, at 17; Finding of Fact No. 17(d). By contrast, O'Brien did not adequately explain her diagnosis of PTSD and lacked an accurate history of Claimant's preexisting mental health issues.

"[T]he fact that a WCJ may not reiterate and/or pass specific review upon any particular line or portion of testimony does not necessarily constitute a

capricious disregard thereof." *Williams*, 862 A.2d at 145-46. Moreover, "[t]he reasoned decision requirement is simply that the WCJ must articulate some objective reasoning to facilitate appellate review of the same." *Green*, 28 A.3d at 940.

The WCJ's decision includes lengthy summations of all the testimony and sets forth objective reasons for her conclusions. Claimant's argument that the WCJ did not issue a reasoned decision lacks merit.

## II. Psychological Injury

Claimant argues, next, that the Board erred in refusing to add a psychological injury to Employer's NCP. Claimant asserts that her psychological treatment is compensable because even Employer's expert acknowledged that she had psychological symptoms that would benefit from treatment. Claimant Brief at 26 (citing *O'Donnell v. Workers' Compensation Appeal Board (United Parcel Service)*, 831 A.2d 784 (Pa. Cmwlth. 2003)). Claimant contends that her psychological injury developed from the November 8, 2016, work incident and also from Employer's delays in approving treatment options.

Where, as here, a claimant seeks to amend an NCP under Section 413(a) of the Act, 77 P.S. §772, she has the burden of proving that the original work-related injury caused the additional disability. *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Burger)*, 838 A.2d 831, 837 (Pa. Cmwlth. 2003). Compensable psychological work injuries fall into three classifications: (1) the "mental/physical" injury where a psychological stimulus causes a physical injury; (2) the "physical/mental" injury where a physical stimulus causes a psychic injury; and (3) the "mental/mental" injury where a psychological stimulus causes a psychic injury. *Ryan v. Workmen's Compensation Appeal Board (Community*

13

*Health Services)*, 707 A.2d 1130, 1133-34 (Pa. 1998). Here, Claimant asserted a physical/mental injury.

To substantiate a physical/mental injury, the physical injury must arise in the course of employment and thereafter develop a psychological component. If the causal relationship between the claimant's work injury and the alleged psychiatric disability is not clear, the claimant must provide unequivocal medical testimony to establish the relationship.[5] *Bartholetti v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 927 A.2d 743, 746 (Pa. Cmwlth. 2007).

Claimant alleged that her depression, anxiety, PTSD, "or similar mental consequences due to the work incident" were caused by her November 2016 physical injury. C.R., Item 11, at 1. However, Claimant was diagnosed with anxiety and depression in 2010, long before her work injury. She did not report nightmares until February 2018, 15 months after the work incident. Because the causal relationship between Claimant's work injury and her psychiatric conditions were unclear, Claimant was required to provide unequivocal medical testimony to establish causation. *Bartholetti*, 927 A.2d at 746.

The WCJ rejected O'Brien's opinion that Claimant suffered work-related PTSD, in part because she is not a psychiatrist. Instead, the WCJ credited Dr. Sobel's testimony that Claimant's symptoms did not rise to a level of a psychiatric diagnosis of PTSD or depression. Dr. Sobel opined that Claimant might be suffering, at most, an adjustment disorder, but it was not related to the November 2016 incident.

---

[5] "Unequivocal medical testimony is a medical expert's testimony that in his professional opinion the claimant's condition ... did [in fact] come from the work experience." *Bartholetti*, 927 A.2d at 746 n.7 (quotation omitted).

14

Claimant contends, nevertheless, that the WCJ disregarded evidence of her anger and frustration about the legal process and Employer's doctors as well as her "persistent pain" from the work injury. Claimant Brief at 28. All these, she argues, contributed to her psychological symptoms.

In *Westinghouse Electric Corporation*, 838 A.2d 831, we affirmed the addition of a psychological injury as secondary to the physical trauma caused by the work injury. Likewise, in *Huddy v. Workers' Compensation Appeal Board (U.S. Air)*, 905 A.2d 589 (Pa. Cmwlth. 2006), we affirmed the WCJ's amendment of an NCP to include depression. Notably, the employer's expert agreed that the claimant's depression was caused by chronic pain resulting from his work injury; further, the claimant had not suffered depression before the work injury.

By contrast, here, Claimant had a history of pain caused by fibromyalgia as well as anxiety and depression. Further, Dr. Sobel credibly testified that Claimant's anger and frustration were simply her feelings as opposed to psychiatric conditions. The WCJ credited Dr. Sobel's testimony over O'Brien's. "This is the province of the factfinder." *Westinghouse Electric Corporation*, 838 A.2d at 838.

Claimant's reliance on *O'Donnell*, 831 A.2d 784, is misplaced. There, the WCJ found that the claimant suffered psychological symptoms as a result of her work injury. However, the WCJ did not add the psychological injury to her accepted work injury because it was not disabling. We reversed, holding that because the psychological injury was work-related, its treatment was compensable under the Act. *Id.* at 791. In the instant case, Dr. Sobel agreed that Claimant could benefit from psychiatric treatment; however, he also opined that Claimant's psychological symptoms were unrelated to the November 8, 2016, work incident. In short,

15

Claimant did not prove that her need for psychological treatment was related to the November 8, 2016, work incident.

We conclude that the Board did not err in affirming the WCJ's decision refusing to add psychological injuries to the description of Claimant's work injury.

### III. Additional Physical Injuries

Finally, Claimant argues that the Board erred in refusing to amend the NCP to add injuries to her left wrist, low back, and hip and in granting Employer's termination petition. Claimant asserts that she has ongoing pain in her low back and hip down her leg. As such, Employer had the burden to prove that her pain was due to "an independent cause" arising after the work incident. Claimant Brief at 35. Claimant further asserts that Employer's NCP, as amended on August 14, 2018, described the work injury as "multiple head injur[ies]." *Id*. at 34. However, Employer presented no evidence for recovery.

Employer's original NCP from this injury accepted the work injury as "contusion/neck, head, back." C.R., Item 38, at 3. Employer later amended the NCP to describe the work injury as a "contusion" and "multiple head injur[ies]." C.R., Item 38, at 1. Claimant's review petition sought to add injuries to her "[h]ead, neck, low back, hip, buttocks, left shoulder, left arm, left wrist, [and] ankle." C.R., Item 2, at 1. Claimant had the burden to prove that those injuries were related to the work incident. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009) (claimant bears the burden under Section 413(a) of the Act to establish the existence of additional compensable injuries giving rise to corrective amendments).

Before the WCJ, Claimant testified that she no longer had "any problems" with her head, neck, left shoulder, and left ankle. N.T., 1/9/2019, at 26,

16

38; R.R. 146a, 158a. Employer did not have to present evidence relating to the "multiple head injur[ies]" to support its termination petition.

With regard to her low back and hip, Claimant presented the testimony of Dr. Dees, who diagnosed Claimant with lumbar radiculopathy, left hip bursitis, left gluteal tear and coccyalgia, and found these conditions work-related. Dr. Dees admitted, however, that the EMG result was normal with no findings of radiculopathy. She was also unaware that degenerative changes at L4-5 appeared in a 2012 MRI. Dr. Dees further admitted that she had no "definitive diagnosis" for the sacroiliac joint. N.T., 7/27/2018, at 67-68; R.R. 253a-54a. By contrast, Dr. Gordon found no sacroiliac joint dysfunction or inflammation. The MRI of the hip joint from June 2017 was "completely normal." N.T., 2/28/2018, at 17; R.R. 507a. He found no objective explanation for Claimant's low back and hip pain. Dr. Gordon opined that Claimant has returned to her pre-injury baseline associated with her longstanding fibromyalgia and radiculopathy complaints. The WCJ credited Dr. Gordon's testimony.

Both Drs. Gordon and Abboudi testified that Claimant sustained soft tissue contusions and sprains during the November 8, 2016, work incident, and that Claimant had fully recovered from those work injuries. Drs. Gordon's and Abboudi's acknowledgement of Claimant's subjective pain complaints "does not necessarily preclude a termination of benefits when there is no objective evidence to support those complaints." *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 956 (Pa. Cmwlth. 2008).

The Court must view the evidence in a light most favorable to the party that prevailed before the factfinder. Accordingly, the relevant inquiry is not whether "there is evidence in the record which supports a factual finding contrary to that

17

made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Here, the WCJ's factual findings that Claimant sustained only contusions and sprains during the November 8, 2016, work incident, from which she has fully recovered, are supported by substantial evidence. The Board affirmed the WCJ's decision to limit the amendments to the NCP to contusions and sprain injuries, and it affirmed the WCJ's grant of Employer's termination petition. We discern no error on the part of the Board.

### Conclusion

Claimant did not meet her burden of proving by unequivocal medical evidence that she sustained physical work injuries beyond those found by the WCJ or a consequential psychological work injury. Substantial evidence supported the WCJ's findings that Claimant's work injuries consisted of sprains and contusions. Employer presented competent medical evidence that Claimant has fully recovered from these physical work injuries.

Accordingly, we affirm the Board's October 30, 2020, adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trina Smith,                          :
          Petitioner          :
                            :
        v.                    :    No. 1201 C.D. 2020
                            :
City of Philadelphia (Workers'        :
Compensation Appeal Board),           :
          Respondent          :

# **O R D E R**

AND NOW, this 10th day of August, 2021, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter, dated October 30, 2020, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita