IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abington Memorial Hospital,     :
          Petitioner     :
     :
     :
     :
     v.     :
     :
Workers' Compensation Appeal     :
Board (Maldonado),     :   No. 1018 C.D. 2018
          Respondent     :   Submitted: February 1, 2019


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: November 18, 2019


Abington Memorial Hospital (Employer) petitions for review of the June 26, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the workers' compensation judge (WCJ) that, *inter alia*, denied Employer's review petition to set aside the notice of compensation payable (NCP) under the Workers' Compensation Act (Act).[1] Upon review, we vacate and remand for a new decision by a WCJ in accordance with this opinion.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

The WCJ's decision also denied Juan Maldonado's (Claimant) review petition which sought to expand Claimant's injury to include complex regional pain syndrome. That petition is not at issue before this Court. The WCJ also ordered Employer to pay the litigation costs incurred by Claimant. WCJ's Decision & Order at 10, Reproduced Record (R.R.) at 644a. Employer does not challenge that portion of the WCJ's decision before this Court. Lastly, the WCJ also denied

On November 12, 2014, Juan Maldonado (Claimant) sustained injuries at work when he attempted to catch himself while falling backwards against shelving and 2 metal surgical trays weighing a total of approximately 20 pounds struck his right foot. WCJ's Decision & Order at 1, Finding of Fact (F.F.) 1.b. & 4.c., Reproduced Record (R.R.) at 637a & 640a; Dr. Oslick's 3/26/15 Report, R.R. at 55a. Following the work incident, Claimant immediately went to Employer's emergency department and was informed by doctors there that his toe was dislocated and that he should rest it.[2] F.F. 1.c., R.R. at 637a. The hospital medical records, including x-rays taken the day of the incident, indicate Claimant had dislocated the third toe of the right foot. Emergency Department Medical Records at 2-9, R.R. at 409a-16a. The "toe" was reset at the hospital, but, thereafter, Claimant heard his "toes" pop back out of place while driving home. Deposition of Claimant, 6/11/15, at 12, R.R. at 100a.[3] Claimant contacted Employee Health, and was instructed to come in two days later. F.F. 1.c., R.R. at 637a. Claimant did so, and Dr. Perretti[4] of Employee Health treated Claimant and referred him to a surgeon, Paul Angotti, DPM. F.F. 1.e., R.R. at 637a. Six days after Claimant sustained the injury, Dr. Angotti

Employer's termination petition. Employer does not challenge the denial of the termination petition. *See infra* note 5. Because these petitions are not before this Court, we will not discuss them.

[2] The WCJ's decision states that Claimant dislocated his foot. F.F. 1.c, R.R. at 637a. Later on in his decision, the WCJ notes that "Claimant's injuries related to the November 12, 2014 incident remain as stated in the NCP of December 15, 2014, dislocation of second/third toes of the right foot." F.F. 12, R.R. at 643a.

[3] The WCJ's decision and order erroneously states that Claimant's ankle popped out of place as he drove home from the emergency room. *Compare* F.F. 1.c., R.R. at 637a, *with* Employer's Emergency Department Records at 4, R.R. at 35a, *and* Deposition of Claimant, 6/11/15, at 12, R.R. at 100a.

[4] Dr. Perretti's first name does not appear in the record.

2

performed surgery on Claimant's foot.  F.F. 1.e., R.R. at 637a.  Claimant made six or seven attempts to return to work following the surgery, but could not perform his pre-injury job due to difficulty standing for long periods of time.  F.F. 1.e., R.R. at 637a.  Claimant thereafter treated with panel medical providers at Employee Health. F.F. 1.d., R.R. at 637a.

Claimant's workers' compensation claim was initially denied on December 2, 2014 due to lack of medical or disability documentation.  NCP at 2, R.R. at 434a.  Later, Employer accepted Claimant's work injury by means of an NCP dated December 15, 2014, listing Claimant's injury as a "dislocation of second/third toes" of the right foot.  NCP at 1, R.R. at 433a.  Claimant began receiving biweekly compensation as of November 13, 2014.[5]  NCP at 1, R.R. at 433a.  On August 3, 2015, Employer filed a review petition seeking to set aside the NCP on the basis that Claimant's condition was not caused by or the result of Claimant's employment. Review Petition at 1, R.R. at 9a.  Employer also "assert[ed] that Claimant concealed

---

[5] On April 13, 2015, prior to filing the review petition at issue here, Employer filed a termination petition seeking to terminate Claimant's workers' compensation benefits as of March 31, 2015 on the basis that Claimant had fully recovered from his injury and any ongoing disability resulted from unrelated conditions.  Termination Petition at 1, R.R. at 1a.  The WCJ denied the petition.  WCJ's Decision & Order at 10, R.R. at 644a.  Employer requests that this Court reverse the decision of the Board which affirmed the WCJ's decision denying Employer's review petition to set aside the NCP and Employer's termination petition.  Employer's Brief at 20; *see also id.* at 19.  However, Employer does not develop any argument regarding the denial of the termination petition itself and did not challenge the termination petition before the Board.  Employer's Appeal to Board, Certified Record, Item 15; *see generally* Employer's Brief.  Therefore, any challenge to the denial of the termination petition is waived.  *See* Pa.R.A.P. 2119(a) (stating that the argument section of the brief shall be divided into as many parts as there are questions to be argued, followed by such discussion and citation of authorities as are deemed pertinent); Pa.R.A.P. 1551(a) (stating that, with certain exceptions not applicable here, no question shall be considered by the court which was not raised before the government unit); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

and misrepresented relevant information regarding his prior medical issues, on which [E]mployer relied." *Id.*

Thereafter, the WCJ denied Employer's petition to set aside the NCP. Employer appealed to the Board which affirmed the WCJ's decision.

On appeal to this Court, Employer argues that the WCJ capriciously disregarded evidence and made determinations that are insufficient to allow for meaningful appellate review, rendering the decision not "well reasoned." Employer's Brief at 31. Specifically, Employer claims that the WCJ failed to reconcile or address in any fashion: 1) that Claimant was seen 20 days prior to the alleged injury for a dislocated third toe on the right foot and was told that he needed surgery, a medical history which Employer claims Claimant concealed when he was being treated for his work injury; and 2) that the pre-injury x-ray and the post-injury x-ray from the emergency room visit evidence the exact same findings—a dislocated third right toe. *Id.* at 28.

A review of the evidence before the WCJ reveals Claimant offered into evidence the deposition of Vincent Ferrara, M.D., which was taken on November 11, 2015. F.F. 3, R.R. at 638a. Dr. Ferrara is Claimant's pain management specialist. F.F. 1.h., R.R. at 637a. Dr. Ferrara testified that he had been treating Claimant since 1999 for diabetic neuropathy and, in relation to that condition, stated that he had implanted a morphine pump in Claimant prior to the work incident in order to alleviate his pain and enable him to work. F.F. 3.b & c., R.R. at 638a. Significantly, Dr. Ferrara stated that he saw Claimant on October 2, 2014, just over a month prior to the work injury, at which time Claimant did not have any dislocations of the metatarsophalangeal joints (MPJ) and had dormant peripheral neuropathy. F.F. 3.d., R.R. at 368a. Dr. Ferrara explained that he reviewed a report from Claimant's podiatrist, Mark Oslick, DPM, dated October 23, 2014, that

4

contained no mention of a dislocation of the second MPJ, but rather indicated that x-rays revealed a dislocation of the third MPJ only.[6] F.F. 3.e., R.R. at 638a. Dr. Ferrara stated that he reviewed medical records generated by Employer on November 12, 2014, the date of the work incident, containing x-rays indicating that Claimant had two MPJ dislocations, at the second and third MPJs on the right foot. F.F. 3.f., R.R. at 638a. Specifically, Dr. Ferrara testified that in the emergency room "they felt, from the x-rays and possibly clinically, that he had two metatarsal bone dislocations." Testimony of Dr. Ferrara, 11/11/15 at 9, R.R. at 440a. Dr. Ferrara further stated that the records also indicated that sometime after the work incident Claimant saw Dr. Angotti, who is on Employer's staff, and that Dr. Angotti diagnosed Claimant with a dislocation of the second and third MPJs. *Id.* Dr. Ferrara noted that approximately one week after the work incident, Dr. Angotti dissected the heads of the second and third metatarsals and embedded pins in them. *Id.*

Claimant testified both by way of deposition and before the WCJ that he sustained an injury to his right foot as a result of the work incident on November 12, 2014. F.F. 1 & 2.a., R.R. at 637a-38a. Claimant denied that he concealed his medical history and denied any knowledge of a prior dislocation. Claimant's Deposition Testimony, 6/11/15 at 30 & 36, R.R. at 118a & 124a; *see also* F.F. 1.d., R.R. at 637a. He admitted to seeing a podiatrist every four or five months to have his toenails cut due to diabetes and acknowledged that he had discussed having a hammertoe surgically repaired. Claimant's Deposition Testimony, 6/11/15 at 31 & 38-39, R.R. at 119a & 126a-27a. Specifically, Claimant stated that he disclosed his prior medical history during his emergency room visit on November 12, 2014, including his history of plantar fasciitis, a hammertoe, diabetes and neuropathy.

---

[6] Dr. Oslick's report predates the claimed injury.

5

Claimant's Deposition Testimony, 6/11/15 at 39-40, R.R. at 127a-28a. Claimant denied that he failed to tell a nurse practitioner at Employee Health on November 24, 2014 that he had previously seen a podiatrist. F.F. 1.d., R.R. at 637a; *see also* Claimant's Deposition Testimony, 6/11/15 at 30-31, R.R. at 118a-19a. Claimant testified that he stubbed his toe about five months prior to the November 12, 2014 work incident, but that it was his understanding that he had "just stubbed" his toe, not that it resulted in a dislocation. Hearing Transcript (H.T.) 12/4/16 at 12, R.R. at 550a; *see* F.F. 2.d., R.R. at 638a. He further testified that the stubbed toe did not cause him to miss any time from work and that he worked without restriction following the incident. H.T. 12/4/16 at 12, R.R. at 550a; *see* F.F. 2.d., R.R. at 638a.

For its part, Employer submitted the deposition testimony of John R. Duda, M.D., a board-certified orthopedic surgeon, who performed an independent medical examination (IME) on Claimant on March 31, 2015. F.F. 5, 5.a. & 5.b., R.R. at 641a. At the IME, Claimant informed Dr. Duda that he sustained injuries while at work on November 12, 2014 when a heavy tray fell directly onto his right foot and that he was wearing sneakers at the time of the incident. F.F. 5.c., R.R. at 641a. Claimant also told him that Dr. Angotti operated on his right foot on November 18, 2014. *Id.* Dr. Duda noted that Claimant did not disclose at the IME his history of diabetic neuropathy and morphine pump implantations. *Id.* However, Claimant did mention that he was diagnosed as an insulin-dependent diabetic and that he did not have any prior foot or ankle injuries or surgeries. *Id.* Dr. Duda reviewed Dr. Angotti's surgical report summarizing surgery performed on Claimant's second and third toes, as well as Dr. Oslick's medical report dated October 23, 2014 indicating Claimant had hammertoe deformities of the second and third toes of the right foot. F.F. 5.d. & 5.e., R.R. at 641a. Dr. Duda stated that the

6

mechanism of the work injury could have caused a toe fracture, but opined that Claimant only sustained a contusion to his right foot during the November 12, 2014 work incident, even though the NCP recognized the work injury as a dislocation of the second and third right toes. F.F. 5.g. & 5.h., R.R. at 641a. Dr. Duda further opined that dropping a heavy metal tray on a foot would not aggravate a previously dislocated toe. F.F. at 5.h., R.R. at 641a. Dr. Duda also opined that Claimant had fully recovered from the dislocation of his toes, as there was no evidence that he still possessed this condition. F.F. 5.j., R.R. at 641a.

Employer also submitted the deposition testimony of Dennis Ivill, M.D., who is board certified in physical medicine and rehabilitation. F.F. 4 & 4.a., R.R. at 639a. Dr. Ivill performed an IME on Claimant on September 29, 2016, at which time he took Claimant's medical history and learned of the November 12, 2014 work incident and subsequent surgery. F.F. 4.b, 4.c. & 5.d., R.R. at 640a. Claimant informed Dr. Ivill that he attempted to return to work, but had to stop due to his pain. F.F. 5.d., R.R. at 640a. Claimant related to Dr. Ivill his history of diabetic neuropathy, morphine pump implantations, sleep apnea and prostate cancer. F.F. 4.e., R.R. at 640a. Dr. Ivill reviewed the records generated by Employer's emergency department following the work incident, including x-rays evidencing dislocation of Claimant's third MPJ. F.F. 4.f., R.R. at 640a. Dr. Ivill noted that the records indicated that on November 17, 2014, Dr. Angotti performed a partial second and third metatarsal head resection and arthroplasty of the second and third digits with pinning. *Id.* Dr. Ivill also reviewed records dated October 23, 2014, 20 days before the work injury, generated by Dr. Oslick, detailing Claimant's surgical

evaluation with Dr. Fleming.[7] F.F. 4.g., R.R. at 640a. Dr. Ivill stated that these records indicate that Claimant was complaining of pain in both feet and that x-rays of his right foot revealed the presence of a dislocated third MPJ, and were negative for a second toe dislocation and subluxation. *Id.* Despite the description of the accepted work injury on the NCP, Dr. Ivill opined that Claimant only suffered a contusion as a result of the work incident, that the dislocations were non-acute and chronic problems associated with aging, and that the hammertoe deformities of Claimant's second and third toes were preexisting. F.F. 4.h. & 4.i., R.R. at 640a. Dr. Ivill opined that Claimant had fully recovered from his contusion and could return to full-duty work. F.F. 4.j., R.R. at 641a.

Employer also submitted the deposition testimony of Sue Schweitzer, regional claims supervisor for PMA Insurance (PMA). F.F. 6 & 6.a., R.R. at 642a. Schweitzer testified as follows. Schweitzer's job duties include overseeing a team of adjusters. F.F. 6.a., R.R. at 642a. Schweitzer is familiar with Claimant's workers' compensation claim, but testified that Frank Riggitano, who no longer works for PMA, had investigated Claimant's injury. F.F. 6.b., R.R. at 642a. Schweitzer believes that Riggitano relied upon Dr. Angotti's medical report when he issued the NCP on December 15, 2014. *Id.* Schweitzer stated that dislocations of the second and third toes were accepted as work-related, even though Employer's emergency department records only confirmed a dislocation of the third toe. F.F. 6.c., R.R. at 642a. Schweitzer stated that Employer's records reveal that Claimant did not report a history of right foot issues, including dislocation. *Id.* Schweitzer eventually reviewed a medical record dated October 23, 2014, in which Dr. Oslick diagnosed

---

[7] Dr. Oslick referred Claimant to Dr. Fleming, a podiatrist, for further surgical evaluation. *See* Deposition of Claimant, 6/11/15 at 24, R.R. at 112a; Dr. Oslick's 9/13/12 Report at 2, R.R. at 241a. Dr. Fleming's first name does not appear in the record.

8

Claimant with a dislocated third MPJ and hammertoe deformities of the second and third toes of the right foot. F.F. 6.d., R.R. at 642a. Schweitzer also noted that a report from Dr. Oslick dated September 13, 2012 indicated that Claimant then had a stress fracture of the second metatarsal of the right foot and moderate hammertoes of digits two and three on the right foot. *Id.* Schweitzer testified that the work injury would not have been recognized as compensable had Claimant been honest about his past medical history. F.F. 6.e., R.R. at 642a. Schweitzer admitted that there is no evidence that Claimant had a dislocated second toe of the right foot prior to the work incident. F.F. 6.e., R.R. at 642a. Schweitzer also acknowledged there is no evidence in the record that Claimant suffered a traumatic injury to his right foot before the work incident. F.F. 6.f., R.R. at 642a.

On June 12, 2017, the WCJ issued a decision and order, which, *inter alia*, denied Employer's review petition. WCJ's Decision & Order, 6/12/17 at 1 & 11, R.R. at 635a & 645a. The WCJ found that Employer's emergency department medical records included x-rays showing that Claimant had a dislocated right third toe. F.F. 7.a., R.R. at 642a. The WCJ also noted that Dr. Oslick had written in a treatment report dated October 23, 2014 that x-rays indicated Claimant had a dislocated right third MPJ. F.F. 7.c., R.R. at 642a. The WCJ further noted that Dr. Oslick had written in a report dated September 13, 2012 that Claimant had a subluxation/dislocation of the right third MPJ. *Id.* As the arbiter of credibility,[8] the WCJ found Claimant's testimony credible in part, reasoning that Claimant's attempts to return to work after surgery, each failing due to his difficulty standing, demonstrated his veracity. F.F. 9, R.R. at 642a-43a. The WCJ found that Claimant did not hide his underlying health history and noted that this determination was

---

[8] *See infra* discussion at p. 14.

supported by the emergency room treatment records which "state that [] Claimant had a history of diabetes, neuropathy, hammer toe deformities in his right foot and that he has a morphine pump." F.F. 7.a., R.R. at 642a; F.F. 9, R.R. at 642a-43a. The WCJ further accepted Claimant's contention that he did not have prior surgery or trauma to his right foot.[9] F.F. 9, R.R. at 643a.

The WCJ found Schweitzer's testimony credible for the most part. F.F. 10, R.R. at 643a. However, the WCJ noted that Schweitzer did not know the manner in which the claims adjuster asked Claimant questions about his underlying health history. *Id.* The WCJ also found Schweitzer's assertion that Claimant hid his underlying history to be not credible, reasoning that Employer's claim that it "merely had Dr. Angotti's medical reports when the NCP was issued is undermined by the fact that [] Employer, which is a hospital, treated [] Claimant on the day of his work injury and generated records that include references to his underlying health history." *Id.*

The WCJ did not credit Dr. Duda's opinion that Claimant only sustained a contusion, finding that this was "undermined by the post-injury x-rays which showed a dislocation." F.F. 13, R.R. at 643a. The WCJ also found "that [] Employer was well aware of [] Claimant's history of neuropathy and a morphine pump because it provided [] Claimant emergency medical treatment and the records that were generated indicate [] Claimant disclosed these conditions," such that "it had ample time to investigate this claim when it issued the NCP." F.F. 14, R.R. at 643a.

The WCJ concluded that Employer "failed to meet its burden in the review petition to set aside the NCP because it had time to investigate [] Claimant's

___

[9] *See supra* p. 6 (discussing Claimant's testimony that it was his understanding that he had "just stubbed" his toe previously, not that it resulted in a dislocation).

10

claim and it had knowledge about it, having treated Claimant in the Employer's emergency room." WCJ's Decision & Order at 10, R.R. at 644a. The WCJ found that Claimant's injuries related to the November 12, 2014 work incident remain as stated in the December 15, 2014 NCP—dislocation of the second and third right toes. F.F. 12, R.R. at 643a.

Employer appealed to the Board, which affirmed, concluding, *inter alia*, that the WCJ did not err in denying Employer's review petition seeking to set aside Claimant's NCP. Board's Opinion & Order at 5 & 9, R.R. at 652a & 656a. The Board identified the central issue as whether Claimant concealed pertinent information regarding his medical history. Board's Opinion & Order at 7, R.R. at 654a. The Board concluded that the credited evidence of record did not support Employer's assertion that Claimant concealed material information that would have affected the acceptance of his injury through the NCP. Board's Opinion & Order at 6, R.R. at 653a.

The Board further determined that the WCJ's decision was reasoned for purposes of Section 422(a) of the Act, 77 P.S. § 834. Board's Opinion & Order at 6-7, R.R. at 653a-54a. The Board noted that where testimony is presented by deposition, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a reasoned one which facilitates effective appellate review. Board's Opinion & Order at 6, R.R. at 653a (citing *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003)). The Board reasoned that Section 422(a) of the Act does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Board's Opinion & Order at 7, R.R. at 654a. The Board further noted that an appellate tribunal must view the WCJ's reasoning as a whole and may overturn a

11

credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational. *Id.* (citing *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc., and State Workers' Ins. Fund)*, 962 A.2d 14 (Pa. Cmwlth. 2008)). The Board found that the WCJ gave numerous objective reasons for accepting Claimant's evidence and rejecting Employer's evidence. *Id.*; *see also* discussion *infra* pp. 14-15.

Before this Court,[10] Employer argues that the Board's decision affirming the WCJ's denial of Employer's review petition must be reversed.[11] In particular, Employer contends that the NCP should be set aside because Claimant concealed relevant and material medical history, specifically his prior toe dislocation and need for surgery. Employer's Brief at 20-22 (citing *Barna v. Workmen's Comp. Appeal Bd. (Jones & Laughlin Steel Corp.)*, 522 A.2d 22 (Pa. 1987) and *Phillips v. Workmen's Comp. Appeal Bd.*, 545 A.2d 869 (Pa. 1988)). Employer further contends that the WCJ failed to address that x-rays revealed that Claimant had a dislocated toe and needed surgery prior to the injury and failed to address the fact that the x-ray, taken on the day of the injury, did not reveal a dislocation of both the second and third MPJ joints on the right foot, but only indicated a third-toe dislocation. Employer contends that these failures render the WCJ's decision not "well-reasoned" and amount to a capricious disregard of evidence. *Id.* at 15.

---

[10] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 605 n.6 (Pa. Cmwlth. 2018); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[11] *See supra* notes 1 & 5.

12

Employer asserts that the decision is not reasoned under the Act as "[t]he WCJ failed to provide the required rationale for his credibility determinations" and that the WCJ's finding that Claimant did not have prior trauma to his toe when Claimant had testified that he stubbed his toe at work four to five months before the work incident was unsupported. *Id.* at 26. Employer also asserts that the WCJ incorrectly concluded that Claimant did not conceal his underlying health history due to his disclosure of neuropathy and a morphine pump in Employer's emergency department, as those facts "are wholly irrelevant to [] Employer's Review Petition to Set Aside the NCP" and are "simply a red herring." *Id.* at 27.

Significantly, as stated, Employer issued an NCP accepting Claimant's injury, described as "dislocation of second/third toes" of the right foot. NCP at 1, R.R. at 433a. Section 413(a) of the Act provides as follows:

> A [WCJ] may, at any time, review and modify or set aside a[n] [NCP] and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] or agreement was in any material respect incorrect.

77 P.S. § 771. The party seeking to modify or set aside the NCP bears the burden to prove that it was materially incorrect when it was issued. *See City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011) (citing *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 582 (Pa. 2009)). A claimant's willful concealment of relevant medical evidence may enable an employer to obtain nullification of the compensation agreement, when such evidence reveals that the claimant's disability was not work-related. *See Phillips*, 545 A.2d at 870.

13

First, we examine the WCJ's determination that Claimant did not willfully conceal relevant evidence regarding his medical history, such as to require the voiding of the December 15, 2014 NCP. *See Phillips*, 545 A.2d at 872-73.

It is well established that the WCJ, as fact finder, "has exclusive province over questions of credibility and evidentiary weight." *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). The WCJ is "free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* "[T]he WCJ determines all issues of testimonial credibility and such determinations bind the parties on appeal unless made arbitrarily and capriciously." *Ryan v. Workman's [sic] Comp. Appeal Bd. (Cmty. Health Servs.)*, 707 A.2d 1130, 1134 (Pa. 1998). Moreover, "the WCJ is entitled to draw reasonable inferences from the testimony." *Casne*, 962 A.2d at 20. "Further, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161-62 (Pa. Cmwlth. 2016).

Here, the WCJ credited Claimant's testimony that he did not hide his underlying health history and rejected Schweitzer's assertion to the contrary. F.F. 9-10, R.R. at 642a-43a. Specifically, as the Board noted, the WCJ provided objective reasons, stating that Employer's emergency department treatment records support Claimant's assertion that he did not hide his underlying health history, as they indicate that he informed Employer about his neuropathy and morphine pump.[12]

---

[12] The Abington Memorial Hospital Emergency Department record from the day of the work injury indicates:

> MEDICAL HISTORY: "Sleep Apnea, Diabetes, IDDM,
> Neuropathy in Diabetes, sleep apnea, Prostate CA.

14

F.F. 9, R.R. at 642a-43a.  The WCJ also noted that Claimant had no prior surgery or trauma to his right foot.[13]  F.F. 9, R.R. at 643a.  The WCJ further noted that there was no evidence showing how the claims adjuster handling the case asked about Claimant's prior health history.  *Id.*  The WCJ also reasoned that Claimant's veracity is demonstrated by the fact that he attempted several times to return to work following his surgery, but stopped working due to difficulty standing.  F.F. 9, R.R. at 642a-43a.  Thus, as the Board ruled, "the credited evidence of record does not support the fact [that] Claimant concealed any material information that would have affected the acceptance of his injury through the NCP . . . ."  Board's Opinion at 6, R.R. at 653a.  As stated, credibility determinations are for the WCJ, not the Board or this Court.  *See Greenwich Collieries*, 664 A.2d at 706.

Nonetheless, Employer argues that the WCJ's credibility determinations are insufficient to allow for meaningful appellate review, "rendering the [d]ecision not well reasoned" pursuant to Section 422(a) of the Act.  Employer's Brief at 31.

Initially, we note this Court has observed that "there is no requirement in the law that the WCJ's decision be 'well-reasoned' in the sense that a reviewing court agrees with the reasoning offered; the requirement is that the decision be 'reasoned' within the meaning of Section 422(a) of the Act."  *Green v. Workers' Comp. Appeal Bd. (US Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011) (emphasis added).  Section 422(a) of the Act provides in relevant part:

SURGICAL HISTORY: morphine pump, mass removed from tongue."

R.R. at 408a.

[13] *See supra* p. 6.

15

> All parties to an adjudicatory proceeding are entitled to a *reasoned decision* containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphasis added). "[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels*, 828 A.2d at 1052.

In *Daniels*, our Supreme Court distinguished between judicial review of credibility determinations based upon deposition testimony submitted to the WCJ as opposed to a WCJ's evaluation of live testimony. *Daniels*, 828 A.2d at 1052-53. Regarding review of a WCJ's consideration of deposition testimony, the Court noted that "absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 1053. Nevertheless, we have held previously:

16

> [E]ven where a WCJ has based a credibility determination on a cold record, substantial deference is due. We must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.

*Casne*, 962 A.2d at 19.

Here, the WCJ reviewed Claimant's deposition testimony and later conducted a hearing at which Claimant testified. The WCJ then found credible Claimant's assertion that he did not hide his underlying health history. F.F. 9, R.R. at 642a-43a. However, as this statement was made during Claimant's deposition testimony, we must ascertain whether the WCJ provided some actual objective basis for the credibility determination in order to find that his decision is "reasoned" under Section 422(a) of the Act, 77 P.S. § 834. *See Daniels*, 828 A.2d at 1053. As noted by the Board, the WCJ did supply objective reasons for accepting Claimant's testimony. *See supra* pp. 14-15.

Additionally, the WCJ reviewed Schweitzer's deposition testimony and discredited her opinion that Claimant hid his underlying health history. F.F. 10, R.R. at 643a. The WCJ pointed out that Schweitzer did not know the manner in which the claims adjuster asked Claimant questions about his underlying health history. *Id.* The WCJ also found that Schweitzer's assertion that Employer merely had Dr. Angotti's medical reports when the NCP was issued was undermined by the fact that Employer, which is a hospital, treated Claimant on the day of his work injury and generated records that included references to his underlying health history. *Id.* Moreover, after reviewing deposition testimony, the WCJ discredited the opinions

17

of Dr. Duda and Dr. Ivill that Claimant only sustained a contusion because the post-injury x-rays showed a dislocation.[14]  F.F. 13, R.R. at 643a.

Viewing the WCJ's reasoning as a whole, we do not find that the WCJ's credibility determinations regarding witness testimony are arbitrary or capricious or otherwise flawed as to render them irrational.  *See Casne*, 962 A.2d at 19.  Thus, we decline to overturn them.  The WCJ credited the testimony that supported his determination that Claimant did not conceal his medical history and provided his rationale for accepting that testimony and discredited testimony that contradicted Claimant's assertion.  We discern no error in that determination.

However, a "capricious disregard of evidence occurs . . . when the fact-finder deliberately ignores relevant, competent evidence."  *Williams v. Workers' Comp. Appeal Bd. (USX Corp-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004); *see Higgins v. Workers' Comp. Appeal Bd. (City of Phila.)*, 854 A.2d 1002, 1006 (Pa. Cmwlth. 2004) (finding that WCJ capriciously disregarded competent evidence when he failed to address "competent evidence that logically could not have been avoided in reaching his decision" that NCP did not contain a material defect).  "A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence."  *Williams*, 862 A.2d at 144.  "[R]eview for capricious disregard of material, competent

---

[14] The WCJ's finding of fact is as follows:

> This Judge finds that Dr. Duda's opinion that Claimant only sustained a contusion is not credible.  Dr. Ivill's opinion that the Claimant only sustained a contusion is undermined by the post-injury x-rays which showed a dislocation.

F.F. 13, R.R. at 643a.  Because both Dr. Duda and Dr. Ivill opined that Claimant only sustained a contusion, we assume the WCJ's reason for rejecting this evidence applies to both doctors' opinions, although the WCJ only expressly stated the reason in relation to Dr. Ivill's opinion.

evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).  This Court has held previously:

> Although generally a WCJ may disregard the testimony of any witness, even though the testimony is uncontradicted, he does not have the discretion to capriciously disregard competent evidence without a reasonable explanation or without specifically discrediting it. . . . At the least the findings and conclusions of the fact finder must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of underlying principles of substantive law to that evidence. . . . When a WCJ rejects uncontradicted evidence and makes findings or conclusions which have no rational basis in the evidence of record, that WCJ capriciously disregards competent evidence.  Simply stated, a WCJ may not 'reject' credible and uncontradicted medical evidence without explaining why the evidence is 'rejected.'

*Green*, 28 A.3d at 942 (citing *Acme Markets, Inc. v. Workmen's Comp. Appeal Cd. (Pivalis)*, 597 A.2d 294, 296-97 (Pa. Cmwlth. 1991) (citations and brackets omitted)).

The medical records from the day of the work injury indicate only that there was evidence of subluxation or dislocation of the third toe on the right foot and a possible hammertoe deformity of the second toe.  The records from Claimant's emergency room visit the day of the work injury do not reflect a dislocation of the second right toe.  R.R. at 408a–13a.  The record contains radiology reports from the x-rays taken that day.  The first radiology report reveals no evidence of dislocation or fracture.  R.R. at 414a.  An addendum to the report states that the x-ray reveals

19

only a "subluxation and or dislocation of the third metacarpal [sic] phalangeal joint." R.R. at 415a. The second report states:

> Three views of the right foot were performed for pain and compared to the prior study performed earlier on the same day. There is some mild persistent subluxation of the [proximal interphalangeal] joint of the right third toe. No appreciable fracture is identified. There may be hammertoe deformity of the right second toe better appreciated on this present exam. Metatarsals are otherwise intact.
>
> Impression: Decreased dislocated [proximal interphalangeal] joint of the right third toe although some persistent subluxation remains.

R.R. at 416a.

The WCJ credited the testimony of Dr. Ferrara and in his findings of fact noted that Dr. Ferrara stated that he reviewed medical records from Abington Memorial Hospital dated November 12, 2014, which is the day of the work injury, and they indicate that x-rays showed Claimant had two dislocations. F.F. 3.f., R.R. at 638a. However, the WCJ found that the x-rays from November 12, 2014 show only a dislocated third right toe. F.F. 7.a., R.R. at 642a. The WCJ then went on to conclude that Claimant's injuries related to the November 12, 2014 incident remain as stated in the NCP of December 15, 2014, dislocation of second/third toes of the right foot, without addressing the reliability of the x-rays taken the day of the work injury or addressing the fact that the records on which Dr. Ferrara relied directly contradict Dr. Ferrara's testimony. *See* F.F. 12, R.R. at 643a. The only diagnostic tests evaluating Claimant's work injury the day it occurred are the radiology reports. The WCJ, however, failed to address "this competent evidence that logically could not have been avoided in reaching his decision" that the NCP did not contain a

20

material defect, thus representing a capricious disregard of competent evidence. *See Higgins*, 54 A.2d at 1006.

As stated, Section 413(a) of the Act provides that "[a] [WCJ] may, at any time, review and modify or set aside a[n] [NCP] . . . if it be proved that such notice of compensation payable or agreement was in any material respect incorrect." 77 P.S. § 771. On appeal, Employer claims that the WCJ capriciously disregarded evidence by failing to consider both the pre-injury x-rays and the radiology reports from the day of the injury. *See* Employer's Brief at 28. We agree. The reasons why the WCJ disregarded the apparently trustworthy x-ray evidence are not obvious from the record and that failure to articulate any reason for accepting or rejecting this evidence precludes effective appellate review. *See Williams*, 862 A.2d at 144.

Further, as the WCJ did not address the x-rays that indicate that the only injury is a third toe dislocation, not a second and third toe dislocation as stated in the NCP, this Court is left to speculate as to whether the post-work injury dislocation was in fact the same injury described in a pre-injury x-ray of October 23, 2014, which indicates that Claimant suffered a dislocation of the third MPJ on the right foot at that time, 20 days prior to the claimed work injury. The WCJ notes:

> Dr. Mark Oslick wrote in a treatment record dated October 23, 2014 that the x-rays show that [] Claimant has a dislocated third [MPJ] on the right and that he is on his "feet all day at work." Moreover, Dr. Oslick wrote in a report dated September 13, 2012 that x-rays revealed subluxation/dislocation at the third [MPJ] on the right.

R.R. at 642a. However, the WCJ fails to address this evidence and fails to acknowledge what impact, if any, this medical evidence has on whether the work

21

injury as described in the NCP was materially incorrect. *See* Section 413(a) of the Act, 77 P.S. § 771. As such, we conclude that the determination of the WCJ was not "reasoned" as required due to the WCJ's failure to address competent evidence and failure to adequately explain the reasons for accepting or rejecting that evidence. *See* Section 422(a) of the Act, 77 P.S. § 834.

Accordingly, we vacate the Board's Decision, and we remand the matter to the Board to remand to the WCJ to make the necessary factual findings and to issue a reasoned decision in accordance with the provisions of Section 422(a) of the Act, 77 P.S. § 834, and this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

22

Abington Memorial Hospital,        :
              Petitioner      :
                             :
        v.                 :
                             :
Workers' Compensation Appeal   :
Board (Maldonado),         :   No. 1018 C.D. 2018
              Respondent   :

## O R D E R

AND NOW, this 18th day of November, 2019, the June 26, 2018 opinion and order of the Workers' Compensation Appeal Board (Board) is VACATED and this matter is REMANDED to the Board to remand to the workers' compensation judge to issue a decision in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge